Troncalli Chrysler Plymouth Dodge, Inc. ("Troncalli"), petitions this Court for a writ of mandamus directing the trial court (1) to vacate its order denying Troncalli's motion to dismiss the claims of David J. Case against it for lack of personal jurisdiction, and (2) to enter an order dismissing the complaint. We grant the petition.
On August 20, 2002, Case sued Troncalli and Alexander Dodge Chrysler Plymouth, Inc.; the complaint contained the following factual allegations: *Page 461 
"COMPLAINT
"STATEMENT OF THE PARTIES
 "1. Plaintiff, David J. Case, is a resident citizen of St. Clair County, Alabama.
 "2. Defendant, Alexander Dodge Chrysler Plymouth, Inc. (hereinafter referred to as `Alexander Dodge'), is a domestic corporation doing business in Marshall County, Alabama.
 "3. Defendant, [Troncalli], is a foreign corporation doing business in Cumming, Georgia.
"STATEMENT OF FACTS
 "On or about June 29, 2001, [Case] went to Defendant Alexander Dodge to purchase a truck. Although Defendant Alexander Dodge did not have the particular truck [Case] wanted to purchase on their lot, they did locate such vehicle at Defendant [Troncalli] in Cumming, GA. [Case] paid Defendant Alexander Dodge for a 2001 Dodge Dakota pick-up truck. They, in turn, paid [Troncalli] for said vehicle. [Case] then went to Defendant [Troncalli's] place of business to pick up the vehicle.
 "The 2001 Dodge Dakota which [Case] purchased was represented to him as being brand new. The vehicle had only nineteen (19) miles on the odometer when [Case] picked it up. However, sometime after [Case] purchased the truck the power window on the driver's side ceased to function properly. [Case] took the truck to Jim Burke Dodge in Birmingham, AL, to get the power window inspected. Upon inspecting the vehicle, the service manager at Jim Burke Dodge pointed out to [Case] that the paint on the driver's door of his vehicle did not match the paint on the remainder of the vehicle. [Case was asked] whether he had wrecked the vehicle. Naturally, this was the first knowledge [Case] had that his vehicle may not have been brand new when he purchased it.
 "The service manager suggested that [Case] take his truck to a body shop for further inspection. Therefore, [Case] took the vehicle to Daffron's Body Shop in Pell City, AL. A technician at Daffron's Body Shop confirmed that the vehicle's driver door had sustained injury. [Case] and/or [Case's] insurance provider were forced to pay for having the damaged door and window repaired at Daffron's Body Shop."
The claims against the defendants included (1) "conspiracy to commit fraud," (2) bad faith, (3) misrepresentation, (4) deceit, and (5) breach of contract.
Troncalli did not answer the complaint. Instead, on September 19, 2002, it filed a "Special Appearance for the Purpose of Alleging Lack of Personal Jurisdiction." Troncalli alleged that it "had no contact with the State of Alabama in this transaction," and moved to dismiss the complaint on that ground. Troncalli subsequently supported the motion with a brief and the affidavit of Ryan Troncalli, its general manager. The affidavit stated, in pertinent part:
 "3. [Troncalli] is incorporated in the State of Georgia, with its principal place of business in Cumming, Georgia.
 "4. In or about June of 2001, [Troncalli] was contacted by [Alexander Dodge], a dealership located in Albertville, Alabama, regarding a dealer transfer purchase of a 2001 Dodge Dakota truck.
 "5. David Case, the Plaintiff in the above-styled case, had approached Alexander Dodge regarding the purchase of a particular 2001 Dodge Dakota truck, but Alexander Dodge did not have that particular vehicle on its lot at the time. *Page 462 
Alexander Dodge located said vehicle at [Troncalli] through the use of a computer database locator, which is maintained by Chrysler and includes a list of all Chrysler vehicles which are delivered to its various dealerships.
 "6. On or about the 29th day of June, 2001, [Case] picked up the vehicle made the basis of this suit at [Troncalli] in Cumming, Georgia.
 "7. At the time of delivery, [Case] delivered a check . . . payable to [Troncalli] by Alexander Dodge in consideration for the dealer transfer. [Case] also signed the Odometer Statement . . . on behalf of Alexander Dodge and accepted the Bill of Sale and the Manufacturer's Certificate of Origin on behalf of Alexander Dodge. . . . As the Manufacturer's Certificate of Origin indicates, the vehicle was transferred from [Troncalli] directly to Alexander Dodge.
 "8. In the dealer transfer described above, the vehicle made the basis of this suit was sold wholesale directly to Alexander Dodge, and Alexander Dodge then made a retail sale of the same vehicle to [Case].
 "9. There were no negotiations, whether by telephone, correspondence, email, or other communication between Troncalli and [Case]. Further, during the dealer transfer, there were no telephone calls, correspondence, email, or other communications made by or on behalf of [Troncalli] to the State of Alabama, whether to [Case], Alexander Dodge, or any other parties in connection with the dealer transfer.
 "10. The State of Alabama is outside of the market area of [Troncalli]. [Troncalli] does not conduct business, advertise, market, or solicit customers in or from the State of Alabama, nor does it ship vehicles into the State of Alabama or otherwise conduct business or operate within the State of Alabama.
 "11. All paperwork and money involved in the above-described dealer transfer, as well as delivery of the vehicle itself, occurred within the State of Georgia."
Case filed a response to the motion to dismiss and an "Alternative Motion to Continue to Allow the Plaintiff to Conduct Limited Discovery." In the latter motion, Case stated:
 "[Case] is satisfied that this court has personal jurisdiction over Defendant Troncalli as a matter of law based on its `specific contacts' with Alabama. However, if this court should disagree and rule that `specific [jurisdiction' is] lacking, it should allow a limited discovery period to allow [Case] to probe Defendant Troncalli's [contacts for `general jurisdiction' in] Alabama. . . .
 "[Case] could not possibly produce this information without discovery. In other words, this is a situation where Defendant Troncalli holds all of the cards. Although it filed its motion to dismiss on September 16, 2002, it has only recently filed affidavit testimony by its general manager on the issue of its general [jurisdiction] contacts with Alabama. This testimony has not been subject to cross-examination and, because the information sought lies solely in the hands of Defendant Troncalli, the only way for [Case to] probe this information is from written discovery and depositions."
(Emphasis added.)
On March 3, 2003, the trial court entered the following order:
 "Motion to dismiss by Defendant [Troncalli] denied. [Troncalli] participates in a network which offers vehicles for sale to persons in Alabama. [Troncalli] knew the vehicles listed on the network *Page 463 
may be purchased by residents of Alabama who would otherwise have no reason to visit the Defendant Troncalli's location in Georgia."
Troncalli then filed this petition, asking this Court to direct the trial court to vacate its order denying Troncalli's motion to dismiss the complaint and to direct the trial court to grant its motion to dismiss for lack of personal jurisdiction.
The following principles are well established:
 "[A] petition for a writ of mandamus is the proper device by which to challenge the denial of a motion to dismiss for lack of in personam jurisdiction. See Ex parte McInnis, 820 So.2d 795 (Ala. 2001); Ex parte Paul Maclean Land Servs., Inc., 613 So.2d 1284, 1286
(Ala. 1993). '"An appellate court considers de novo a trial court's judgment on a party's motion to dismiss for lack of personal jurisdiction."' Ex parte Lagrone, 839 So.2d 620, 623 (Ala. 2002) (quoting Elliott v. Van Kleef, 830 So.2d 726, 729 (Ala. 2002)). Moreover, '[t]he plaintiff bears the burden of proving the court's personal jurisdiction over the defendant.' Daynard v. Ness, Motley, Loadholt, Richardson Poole, P.A., 290 F.3d 42, 50 (1st Cir. 2002)."
Ex parte Dill, Dill, Carr, Stonbraker Hutchings, P.C., [Ms. 1011586, February 21, 2003] So.2d, (Ala. 2003).
Jurisdiction is obtained over out-of-state defendants pursuant to the "long-arm" rule, Ala.R.Civ.P. 4.2(a)(2)(A)-(I). Recently, we explained:
 "`A physical presence in Alabama is not a prerequisite to personal jurisdiction over a nonresident.' Sieber v. Campbell, 810 So.2d 641, 644 (Ala. 2001). What is required, however, is that the defendant have such contacts with Alabama that it '"should reasonably anticipate being haled into court [here]."' Dillon Equities v. Palmer Cay, Inc., 501 So.2d 459, 462
(Ala. 1986) (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)).
 "Depending on the quality and quantity of the contacts, jurisdiction may be either general or specific. Leventhal v. Harrelson, 723 So.2d 566, 569
(Ala. 1998). `General jurisdiction applies where a defendant's activities in the forum state are "substantial" or "continuous and systematic," regardless of whether those activities gave rise to the lawsuit. . . . A court has specific jurisdiction when a defendant has had few contacts with the forum state, but those contacts gave rise to the lawsuit.' Id.
 "But regardless of whether jurisdiction is alleged to be general or specific, the nexus between the defendant and the forum state must arise out of '"an action of the defendant [that was] purposefully directed toward the forum State."' Elliott[v. Van Kleef], 830 So.2d [726] at 731 [(Ala. 2002)] (quoting Asahi Metal Indus. Co. v. Superior Court of California, 480 U.S. 102, 112 (1987)). `This purposeful-availment requirement assures that a defendant will not be haled into a jurisdiction as a result of "`the unilateral activity of another person or a third person.'"' Elliott, 830 So.2d at 731
(quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985))."
Ex parte Dill, 866 So.2d at 525.
Within the context of these principles, the dispositive questions in this case are (1) whether Troncalli has contacts with Alabama sufficient to subject it to specific jurisdiction, and, if not, (2) whether Case is entitled to discovery for the purpose of seeking a basis for general jurisdiction. *Page 464 
 I. Specific Jurisdiction
"When specific jurisdiction is the basis for adjudication of claims against an out-of-state defendant, due process requires `a clear, firm nexus between the acts of the defendant and the consequences complained of in order to establish the necessary contacts.'" Ex parte Dill, 866 So.2d at 531-532 (quoting Duke v. Young, 496 So.2d 37, 39 (Ala. 1986)). Case contends that specific jurisdiction may properly be exercised pursuant to Rule 4.2(a)(2)(A)-(E) and (I).
Specific jurisdiction "is authorized by Rule 4.2(a)(2)(I), the `catch-all provision' of Alabama's long-arm rule. See Jerome Hoffman Sandra Guin, Alabama Civil Procedure § 2.48 (1990)." Ex parte Dill, 866 So.2d at 531. Rule 4.2(a)(2)(I) provides:
 "A person has sufficient contacts with the state when that person, acting directly or by agent, is or may be legally responsible as a consequence of that person's
". . . .
 "(I) otherwise [than the circumstances listed in A-H] having some minimum contacts with this state and, under the circumstances, it is fair and reasonable to require the person to come to this state to defend an action. The minimum contacts referred to in this subdivision (I) shall be deemed sufficient, notwithstanding a failure to satisfy the requirement of subdivisions (A)-(H) of this subsection (2), so long as the prosecution of the action against a person in this state is not inconsistent with the constitution of this state or the Constitution of the United States."
"Subsection (I) `extends the jurisdiction of this state's courts to the permissible limits of due process.' Martin v. Robbins, 628 So.2d 614, 617
(Ala. 1993)." Ex parte Dill, 866 So.2d at 531. If the exercise of personal jurisdiction would offend the due-process requirements of Rule 4.2(a)(2)(I), it may not be exercised under Rule 4.2(a)(2)(A)-(E). Ex parte Dill, 866 So.2d at 525. Therefore, we first examine whether Troncalli's nexus with Alabama satisfies subdivision (I).
Case concedes, as he must, that Troncalli's jurisdictional objection "might be correct if [Case] simply drove to [Troncalli's] Georgia location to purchase the vehicle without being induced to do so." Case's brief, at 19. This is so, he argues, because personal jurisdiction, which purports to be based solely on an isolated sale by an out-of-state defendant to the in-state plaintiff, is generally unsustainable. SeeNetwork Professionals, Inc. v. Network Int'l, Ltd., 146 F.R.D. 179, 181
n. 1 (D.Minn. 1993) ("The due process analysis focuses on a defendant's contacts with the forum, not its contacts with the plaintiff; thus, an isolated sale will not support jurisdiction, even if the cause of action arises from the sale."); see also Wines v. Lake Havasu Boat Mfg., Inc.,846 F.2d 40 (8th Cir. 1988); Chung v. NANA Dev. Corp. 783 F.2d 1124, 1126
(4th Cir. 1986) (a sale comprising no more than an "`isolated' or `attenuated' single transaction . . . has always been deemed inadequate to satisfy due process"); Charia v. Cigarette Racing Team, Inc.,583 F.2d 184, 189 (5th Cir. 1978) ("four sporadic and isolated sales" did not support personal jurisdiction); Butler v. Beer Across America,83 F. Supp.2d 1261 (N.D.Ala. 2000); accord Stuart v. Spademan,772 F.2d 1185 (5th Cir. 1985); Benjamin v. Western Boat Building Corp.,472 F.2d 723 (5th Cir. 1973); Douglas v. Modern Aero, Inc.,954 F. Supp. 1206 (N.D.Ohio 1997); Highway Auto Sales, Inc. v.Auto-Konig of Scottsdale, Inc., 943 F. Supp. 825 (N.D.Ohio 1996). *Page 465 
Of particular relevance is whether the plaintiff initiated the sale or contact. See Madison Consulting Group v. South Carolina, 752 F.2d 1193
(7th Cir. 1985); CBP Res., Inc. v. Ingredient Res. Corp.,954 F. Supp. 1106 (M.D.N.C. 1996); Regent Lighting Corp. v. AmericanLighting Concept, Inc., 25 F. Supp.2d 705 (M.D.N.C. 1997) ("the contacts to be considered for purposes of personal jurisdiction are those actually generated by Defendants, not those created by the unilateral acts of Plaintiff"); Wells American Corp. v. Sunshine Electronics,717 F. Supp. 1121, 1123 (D.S.C. 1989); American Stair Corp. v. RenataConstr. Co., 625 F. Supp. 136 (N.D.Ill. 1985).
Thus, something more than an isolated contact initiated by an in-state plaintiff is required to satisfy the "purposeful-availment" prong of the due-process analysis. "Something more" might involve "prior negotiations and contemplated future consequences, along with . . . the parties' actual course of dealing." Burger King Corp. v. Rudzewicz, 471 U.S. 462,463 (1985) (emphasis added). "Something more" might be found "where the defendant `deliberately' has engaged in significant activities within [Alabama] . . . or has created `continuing obligations' between himself and residents of [Alabama]." 471 U.S. at 475-76 (emphasis added).
Case argues that the "something more" in this action is the use of the "computer database locator," which, Case contends, "allows other Chrysler dealers to know [Troncalli's] inventory for the purposes of making a sale to [their] customers." Case's brief, at 19. Use of this database, Case contends, was an "act made by Troncalli purposefully directed to Alabama entities." Id. at 20. We disagree.
This Court has stated that "`evidence of mere placement of advertisements in nationally distributed paper[s] or journals does not rise to the level of purposeful contact with a forum required by the Constitution in order to exercise personal jurisdiction over the advertiser.'" Elliott v. Van Kleef, 830 So.2d 726, 732 (Ala. 2002) (quoting Federated Rural Elec. Ins. Co. v. Kootenai Elec. Coop.,17 F.3d 1302, 1305 (10th Cir. 1994)). In such a case, the advertiser "cannot be said to have purposefully directed his listing specifically at one state." Elliott, 830 So.2d at 732.
"Internet advertising over a web site falls under the same rubric as advertising in a national publication." Christopher E. Friel, Notes and Comments, Downloading a Defendant: Is Categorizing Internet Contacts a Departure from the Minimum Contacts Test? 4 Roger Williams U. L.Rev. 293, 308 (1998). This is especially true where the Web site is "passive," that is, where the site serves "as little more than an electronic billboard for the posting of information." Butler v. BeerAcross America, 83 F. Supp.2d at 1268.
The database in this case is maintained by Chrysler, not Troncalli; it simply provides a means by which the manufacturer keeps track of the delivery of its vehicles. To be sure, the database may occasionally result in a sales contact for Troncalli, such as the one involved in this case. However, such a contact is not precipitated by the unilateral act of Troncalli, but by the acts of the manufacturer, other dealers, and consumers. In effect, this database is "little more than an electronic billboard for the posting of information." Contacts resulting from its use are at least as attenuated as those resulting from an advertisement in a national publication. Thus, the use of the database does not constitute the "something more" that is required to satisfy the "purposeful-availment" prong of a proper due-process analysis. *Page 466 
Case also contends that the result he seeks is required by three cases in which this Court upheld the exercise of personal jurisdiction: Lowryv. Owens, 621 So.2d 1262 (Ala. 1993); Ex parte Pope Chevrolet, Inc.,555 So.2d 109 (Ala. 1989); and Atlanta Auto Auction, Inc. v. GG AutoSales, Inc., 512 So.2d 1334 (Ala. 1987). Troncalli argues that these cases are distinguishable, and we agree.
The dispute in Lowry arose out of the sale in 1988 of an automobile by Richard Owens and Fitzner Pontiac-Buick-Cadillac, Inc., a Mississippi automobile dealership (hereinafter collectively referred to as "Fitzner"), to Rodney Lowry, an Alabama automobile dealer.621 So.2d at 1263. Although the contact was initiated by Lowry by telephone from Alabama, the sale contemplated the special order of an automobile with "specific options." Id. Fitzner sold "two or three cars," other than the one involved in the dispute, "for resale" by Lowry's Alabama dealership. Id. Additionally, Fitzner had sold at least 16 automobiles to other Alabama residents between 1989 and 1992. Id. at 1264. Moreover, Fitzner was soliciting business from Alabama residents through radio and television broadcasts directed into Alabama. Id. at 1267. Indeed, some of its advertisements were broadcast from a "radio station in Fayette, Alabama." Id. at 1264. Those contacts formed a nexus with Alabama sufficient for the exercise of personal jurisdiction over Fitzner in an action filed by Lowry arising out of the sale of the automobile. Id. at 1267.
The facts in Ex parte Pope Chevrolet, the second case on which Case relies, were summarized in Wenger Tree Service v. Royal Truck Equipment, Inc., [Ms. 1011373, December 20, 2002] 853 So.2d 888, 897
(Ala. 2002), as follows:
 "In . . . [Ex parte] Pope Chevrolet, supra, the Alabama resident plaintiff sued the defendant Georgia automobile dealer in Alabama for fraud and breach of contract in selling a truck to the plaintiff in Georgia. The defendant knew the plaintiff was an Alabama resident who would use the truck in Alabama. The defendant had advertised vehicles for sale through television advertisements and newspaper advertisements respectively broadcast by an Atlanta television station, which the plaintiff received, and printed in a regional newspaper, the Atlanta Constitution, which the plaintiff received. According to the defendant, its advertisements were directed to the Atlanta market and only one-tenth of one percent of its sales were made to Alabama residents. According to the plaintiff, the defendant's sales figures showed that the defendant sold eight or nine vehicles per year to Alabama residents, and those sales produced income in excess of $ 100,000 to the defendant."
(Emphasis added.) Those contacts were sufficient, the Court concluded, to establish personal jurisdiction over the Georgia defendant. Ex parte Pope Chevrolet, 555 So.2d at 114.
Summarizing the third opinion on which Case relies, Wenger Tree Service said:
 "In . . . Atlanta Auto Auction, supra, the plaintiff Alabama automobile seller, on theories of fraud and negligence, sued the defendant Georgia automobile auction company for selling him a car with mechanical problems. The plaintiff had purchased numerous automobiles from the defendant before the plaintiff's purchase of the bad car. The defendant knew that the plaintiff was an Alabama resident automobile seller. Over the years, the plaintiff had received through the mail brochures from the defendant offering special sales and announcing auctions to be held by the *Page 467 
defendant in Georgia. The plaintiff also had received `other solicitations to buy and sell automobiles, through Atlanta Auction.' 512 So.2d at 1335."
853 So.2d at 898 (emphasis added). On those facts, the Court concluded that "Atlanta Auction engaged in a `continuous and systematic' course of conduct in Alabama . . . that [would] support a reasonable exercise of jurisdiction by the courts of Alabama." Atlanta Auto Auction,512 So.2d at 1336.
These three cases involved much more than isolated contacts initiated by in-state plaintiffs.[1] More specifically, Lowry and Atlanta Auto Auction each involved prior sales and a systematic course of dealing between the in-state plaintiff and the out-of-state defendant. This case, by contrast, involves a one-time sale, and therefore no prior course of dealing, between Case and Troncalli. Also, Lowry and Ex parte Pope Chevrolet, unlike this case, involved numerous sales by the out-of-state defendants to Alabama residents, other than the plaintiffs. Case does not allege that Troncalli made sales to other Alabama residents, as was demonstrated in Lowry and Ex parte Pope Chevrolet. Unlike this case, Lowry and Ex parte Pope Chevrolet also involved substantial use of the broadcast media to target Alabama residents. Case does not allege that Troncalli targeted Alabama residents with any advertising. Thus, the defendants in those cases "engaged in significant activities within" Alabama. Burger King, 471 U.S. at 475-76.
In connection with this transaction, the contact was made by, or on behalf of, Case. Case merely benefited from Alexander Dodge's discovery of the location of the vehicle through the equivalent of a national publication. He then traveled to Georgia, delivered the full purchase price, and took delivery of the truck in Georgia. The only face-to-face discussions Case had with Troncalli regarding the vehicle took place in Georgia. Because Troncalli did not finance the car, it contemplated no "future consequences," Burger King, 471 U.S. at 463, and created no "continuing obligations" affecting Alabama. 471 U.S. at 475-76.
Case has cited no authority in which personal jurisdiction was exercised under facts similar to those presented here. He has thus failed to show that this transaction satisfies the due-process requirement of Rule 4.2(a)(2)(I) for the exercise of specific jurisdiction. Consequently, we do not consider Case's arguments based on Rule 4.2(a)(2)(A)-(E). Instead, we consider whether Case is entitled to discovery in an attempt to prove that Troncalli is subject to general jurisdiction.
 II. Jurisdictional Discovery
Case contends that "Troncalli is not entitled to mandamus relief, because," he insists, "the trial court could have properly denied the motion to dismiss to allow [Case] to conduct jurisdictional discovery." Case's brief, at 22. He argues that, because the "only basis for a finding that Troncalli does not do business in Alabama is the affidavit testimony of its general manager," he is entitled to "probe" that testimony with "written discovery and depositions." Id. at 25-26.
"`It is well established that a . . . court has the power to require a defendant to respond to discovery requests relevant to his or her motion to dismiss for lack of jurisdiction.'" Andersen v. Sportmart, Inc.,179 F.R.D. 236, 241 (N.D.Ind. *Page 468 
1998) (quoting Ellis v. Fortune Seas, Ltd., 175 F.R.D. 308, 311
(S.D.Ind. 1997)). "However, it is also well established that a plaintiff does not enjoy an automatic right to discovery pertaining to personal jurisdiction in every case." Id. "[T]o be permitted jurisdictional discovery, plaintiff must at least allege facts that would support a colorable claim of jurisdiction." Schenck v. Walt Disney Co.,742 F. Supp. 838, 840 n. 1 (S.D.N.Y. 1990) (emphasis added). See alsoEllis v. Fortune Seas, Ltd., 175 F.R.D. 308, 312 (S.D.Ind. 1997); Hansenv. Neumueller GmbH, 163 F.R.D. 471, 475 (D.Del. 1995); Daval SteelProds. v. M.V. Juraj Dalmatinac, 718 F. Supp. 159, 162 (S.D.N.Y. 1989); Rich v. KIS California, Inc., 121 F.R.D. 254, 259 (M.D.N.C. 1988).
A request for jurisdictional discovery must offer the court "more than conjecture and surmise in support of [the] jurisdictional theory." Cristv. Republic of Turkey, 995 F. Supp. 5, 13 (D.D.C. 1998). "[The] standard is quite low, but a plaintiff's discovery request will nevertheless be denied if it is only based upon `bare,' `attenuated,' or `unsupported' assertions of personal jurisdiction, or when a plaintiff's claim appears to be `clearly frivolous.'" Andersen, 179 F.R.D. at 242.
Case has failed to satisfy this standard. The allegations of his complaint do not "support a colorable claim of [general] jurisdiction." On the contrary, the only jurisdictional allegations are that Troncalli "is a foreign corporation doing business in Cumming, Georgia"; that Alexander Dodge discovered a vehicle in possession of Troncalli in Georgia; and that Case traveled to Georgia to take possession of the vehicle. A discovery request based on these allegations presents nothing but "conjecture and surmise" regarding the existence of general jurisdiction, and is, therefore, due to be denied.
 III. Summary
In summary, the trial court erred in denying Troncalli's motion to dismiss the complaint as to it. Troncalli's mandamus petition is, therefore, granted. The trial court is directed (1) to vacate its order denying Troncalli's motion to dismiss, and (2) to enter an order dismissing the complaint against Troncalli.
PETITION GRANTED; WRIT ISSUED.
HOUSTON, SEE, LYONS, BROWN, HARWOOD, and STUART, JJ., concur.
JOHNSTONE, J., concurs in part and dissents in part.
[1] Moreover, Wenger Tree Service is, itself, distinguishable from this case on many of the same points.