PER CURIAM.
Phil Owens Used Cars, Inc. (“Owens Used Cars”), petitions for a writ of mandamus directing the Bullock Circuit Court to vacate its order denying Owens Used Cars’ motion to dismiss for lack of personal jurisdiction and to enter an order granting the motion to dismiss. We grant the petition.
The complaint in the underlying action alleges that on October 5, 2003, Frank Johnson, Sr. (“Frank”), Harrison Johnson, Sr. (“Harrison”), and several of their relatives were traveling in Frank’s 1985 Chevrolet conversion van when one of the tires on the van rapidly deflated. Frank, who was apparently driving, lost control of the van. The van left the roadway and overturned. The roof of the van detached from the remainder of the vehicle; the seat-belt mechanisms in the van failed; and the occupants were ejected. As a result of the accident, Frank and Harrison were killed and the other passengers in the vehicle were injured.
*420 The testatrix of Frank’s estate, the administrator of Harrison’s estate, and the other passengers (hereinafter collectively referred to as “the plaintiffs”) filed a complaint in the Bullock Circuit Court against General Motors Corporation, which designed and manufactured the van; Bridge-stone Firestone North America Tire, L.L.C., which manufactured the tires that were on the van at the time of the accident; Owens Used Cars, which was one of the previous owners of the van and which performed conversion work on the van; and others. The numerous claims in the plaintiffs’ complaint all relate to the October 2003 accident and all sound in tort.
As to Owens Used Cars, the complaint alleges that it
“is a corporation organized and existing under the laws of the State of Georgia, with its principal place of business in Lavonia, Georgia. Defendant [Owens Used Cars] has sufficient contacts with the State of Alabama to allow this Court to exercise jurisdiction over it and may be served through its registered agent for service of process [in] ... Lavonia, Georgia.”
The complaint further alleges that “[a]t the time the subject ... Van was placed into the stream of commerce the vehicle was defective and unreasonably dangerous as those terms are defined by Alabama law and specifically the Alabama Extended Manufacturer’s Liability Doctrine in that it did not provide reasonable occupant protection in a foreseeable collision.” It further alleges that “[t]he ... Van was defective in its design, manufacture and/or in the warnings that accompanied it.”
In February 2006, Owens Used Cars filed a motion to dismiss it as a defendant on the ground that the trial court lacked personal jurisdiction over it. Owens Used Cars argued that it did not have sufficient minimum contacts with the State of Alabama for the trial court to assert personal jurisdiction over it and that it had not “purposefully availed itself of the privilege of conducting activities” in Alabama. The motion was supported, in part, by an affidavit from Phil Owens, president of Owens Used Cars. Phil Owens’s affidavit stated, in part:
“4. [Owens Used Cars] is a Georgia corporation. It has always been a Georgia corporation. [Owens Used Cars] has never been incorporated in the State of Alabama.
“5. The principle place of business of [Owens Used Cars] is ... Lavonia, Georgia. That is the only business location of [Owens Used Cars].
“6. [Owens Used Cars] has never had an office or business location in the State of Alabama. Furthermore, [Owens Used Cars] has never employed anyone who was a resident of the State of Alabama.
“7. [Owens Used Cars] has never been registered to do business in the State of Alabama, and the dealership does not do business by agent in the State of Alabama.
“8. [Owens Used Cars] does not, and has not, advertised goods and/or services in the State of Alabama. Likewise, [Owens Used Cars] has never owned any real or personal property located in the State of Alabama.
“9. [Owens Used Cars] does not solicit business or otherwise engage in any other persistent course of conduct or business in the State of Alabama. Accordingly, [Owens Used Cars] does not derive substantial revenue from goods and/or services used or consumed in the State of Alabama, nor from sei'vices rendered in the State of Alabama.
“10. [Owens Used Cars] purchased in 1985 a [General Motors] Van made the basis of this litigation from Maypole *421 Chevrolet, Inc., located in Toccoa, Georgia.... [Owens Used Cars] performed work upon the van and then sold the van to 0 & M Motor Company, located in the State of Georgia. [Owens Used Cars] did not sell, lease, or otherwise enter into a contract for the purchase of the van made the basis of the case with any of the named plaintiffs. Likewise, [Owens Used Cars] did not know where the vehicle would be sold by 0 & M ... (such as in the State of Georgia or in any other state.)”
The plaintiffs opposed Owens Used Cars’ motion, relying on Phil Owens’s deposition testimony, hereinafter discussed, and Owens Used Cars’ ledger records from 1985. The 1985 ledger records reflect that Owens Used Cars sold the van to 0 & M Motor Company (“0 & M”) in June 1985 and that it sold numerous other conversion vans to 0 & M in 1985. The ledger records also reflect that in 1985 Owens Used Cars delivered approximately 30 vans to 2 Alabama automobile dealerships, Bill DeLoach Lincoln Mercury and Cooper Chevrolet.[1] The ledger records indicate that Owens Used Cars delivered vans to one or both of the foregoing Alabama dealerships in all but one month of that year; in some months, sales to the two Alabama dealerships represented approximately five percent of Owens Used Cars’ van sales for the month. The record also contains evidence from which the trial court properly could have concluded that “probably more” than the above-described vans were sold by Owens Used Cars in Alabama.[2]
In addition, we note that Phil Owens testified as follows in his deposition:
1. That Owens Used Cars had “done business with people in Alabama” and that its “contacts with people in Alabama came about through [its] conversion van business”;
2. That Owens Used Cars “first learned of Alabama dealers through [its] conversion van business through Atlanta Auto Auction”;
3. That the Alabama automobile dealers initially “bought vans from [Owens Used Cars] at the Atlanta Auto Auction”;
4. That Owens Used Cars sold more than 10 conversion vans to Alabama dealers through the Atlanta Auto Auction alone and that those sales resulted from more than one transaction;
*422 5. That at the time of Phil Owens’s deposition, Owens Used Cars was in the “used car business” and that it had been in the used car business since 1975;
6. That ... Owens Used Cars continued to conduct its conversion-van business until 1992;
7. That after Alabama automobile dealers purchased conversion vans from Owens Used Cars through the Atlanta Auto Auction, they began “callfing] me and tell[ing] me what kind of van they wanted, and we would convert it for them” and ship it to Alabama;
8. That Owens Used Cars had been a defendant in a lawsuit in Alabama because its “truck driver got involved” in an accident while he was delivering a conversion van to an Alabama automobile dealer.
9. That 0 & M, a Columbus, Georgia, dealer, was a “regular customer” of Owens Used Cars.
Specifically, as to Owens Used Cars’ conversion-van sales to Alabama automobile dealerships, Phil Owens testified, in part:
“Q. When is the last time you took a van over to Atlanta for sale at the auction?
“A. Approximately 1988.
“Q. 1988?
“A. ’87,’88.
“Q. ’87, ’88. And in that 1987 or ’88 time frame, did any of these vans end up in Alabama?
“[Phil Owens’s counsel]: When you say ‘wind up’ [sic], what do you mean?
“Q. Well, you know, did you sell any of the vans to dealers in Alabama?
“[Phil Owens’s counsel]: Through the auction in Atlanta?
“[Plaintiffs’ counsel]: Through the auction in Atlanta.
“A. It would have been, yes.
“Q. Could have been. Did you ever deal directly with any dealers in Alabama?
“A. No.
“Q. All your dealings with Alabama people came about through the auction in Atlanta?
“A. Well, they would call me after-wards and purchase.
“Q. They would call you afterwards and purchase?
“A. Yes.
“Q. Tell me how that all worked?
“A. They’d call me and tell me what kind of van they wanted and we would convert it for them.
“Q. Okay. So dealers from Alabama would call you up and say I want a conversion van based on plan X?
“A. Yes.
“Q. And you would convert it and ship it to Alabama?
“A. Yes.
“Q. Now, is this in addition to vans that you would take over to the auction and sell?
“A. Yes.”
Also, as to 0 & M, the following colloquy appears in Phil Owens’s deposition testimony:
“Q. And it would be expected by you, wouldn’t it, that a dealer in Columbus, Georgia, might well sell one of your vans to somebody in Alabama.
“A. I have no idea where he’d sell it.
“Q. Exactly. He might well sell it right across the river in Alabama.
“A. Being as close as he was, yes.
“Q. Same deal with—
“A. South Carolina.
“Q. —the location — Might -wind up in South Carolina?
*423 “A. Yes.
“Q. And that’s not something that would be unexpected; correct?
“A. No.
“Q. As a matter of fact, you’d expect that to happen; right?
“A. Possibly.”
In November 2006, the trial court entered an order denying Owens Used Cars’ motion to dismiss the claims against it. The trial court did not state the grounds upon which it based its denial of the motion. Owens Used Cars has petitioned this Court for a -writ of mandamus directing the trial court to vacate its November 2006 order and to enter an order dismissing the plaintiffs’ claims against Owens Used Cars.

Standard of Review

It is well settled that
“[m]andamus is a drastic and extraordinary writ, to be issued only where there is (1) a clear legal right in the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court.”
Ex parte Integon Corp., 672 So.2d 497, 499 (Ala.1995). Also, this Court has held that a petition for a writ of mandamus can be used to challenge the denial of a motion to dismiss for lack of personal jurisdiction. Ex parte McInnis, 820 So.2d 795, 798 (Ala. 2001).
The issue of personal jurisdiction “ ‘stands or falls on the unique facts of [each] case.’ ”[3] Ex parte I.M.C., Inc., 485 So.2d 724, 725 (Ala.1986) (quoting and adopting trial court’s order). “An appellate court considers de novo a trial court’s judgment on a party’s motion to dismiss for lack of personal jurisdiction.” Elliott v. Van Kleef, 830 So.2d 726, 729 (Ala.2002) “In considering a Rule 12(b)(2), Ala. R. Civ. P., motion to dismiss for want of personal jurisdiction, a court must consider as true the allegations of the plaintiffs complaint not controverted by the defendant’s affidavits ....” Ex parte McInnis, 820 So.2d at 798. If, however,
“the defendant makes a prima facie evi-dentiary showing that the Court has no personal jurisdiction, ‘the plaintiff is then required to substantiate the jurisdictional allegations in the complaint by affidavits or other competent proof, and he may not merely reiterate the factual allegations in the complaint.’ ”
Ex parte Covington Pike Dodge, Inc., 904 So.2d 226, 229-30 (Ala.2004) (quoting Mercantile Capital, LP v. Federal Transtel, Inc., 193 F.Supp.2d 1243, 1247 (N.D.Ala. 2002)).
“ ‘ “[W]here the plaintiffs complaint and the defendant’s affidavits conflict, the ... court must construe all reasonable inferences in favor of the plaintiff.” ’ Robinson [v. Giarmarco & Bill, P.C.], 74 F.3d [253,] 255 [(11th Cir.1996)] (quoting Madam v. Hall, 916 F.2d 1510, *424 1514 (11th Cir.1990)). ‘For purposes of this appeal [on the issue of in personam jurisdiction] the facts as alleged by the ... plaintiff will be considered in a light most favorable to him [or her].’ Duke v. Young, 496 So.2d 37, 38 (Ala.1986).”
Ex parte McInnis, 820 So.2d at 798.

Alabama’s Long-Arm Rule

The present case involves service of process on a foreign defendant pursuant to Alabama’s long-arm rule. The long-arm rule reads as follows:
“Am appropriate basis exists for service of process outside of this state upon a person or entity in any action in this state when the person or entity has such contacts with this state that the prosecution of the action against the person or entity in this state is not inconsistent with the constitution of this state or the Constitution of the United States .... ”
Rule 4.2(b), Ala. R. Civ. P. In accordance with the plain language of Rule 4.2, this Court has stated that “[t]his rule extends the personal jurisdiction of Alabama courts to the limit of due process under the United States and Alabama Constitutions.” Hiller Invs., Inc. v. Insultech Group, Inc., 957 So.2d 1111, 1115 (Ala.2006).

Due Process and Personal Jurisdiction

In International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), the Supreme Court discussed its view of the “limits of due process” under the United States Constitution in the context of out-of-state service of process on a foreign defendant. The Supreme Court stated:
“Historically the jurisdiction of courts to render judgment in personam is grounded on their de facto power over the defendant’s person. Hence his presence within the territorial jurisdiction of court was prerequisite to its rendition of a judgment personally binding him. But now that the capias ad respondendum [4] has given way to personal service of summons or other form of notice, due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend ‘traditional notions of fair play and substantial justice.’ ”
326 U.S. at 316, 66 S.Ct. 154 (citation omitted) (quoting Milliken v. Meyer, 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278 (1940)); see also Sudduth v. Howard 646 So.2d 664, 667 (Ala.1994) (‘““[W]hat is required is that the out-of-state resident have ‘some minimum contacts with this state [so that], under the circumstances, it is fair and reasonable to require the person to come to this state to defend an action.’ ” ’ ” (quoting Knowles v. Modglin, 553 So.2d 563, 565 (Ala.1989), quoting in turn other cases)).
The Supreme Court continued in International Shoe:
“It is evident that the criteria by which we mark the boundary line between those activities which justify the subjection of a corporation to suit, and those which do not, cannot be simply mechanical or quantitative. The test is not merely, as has sometimes been suggested, whether the activity, which the corporation has seen fit to procure through its agents in another state, is a little more or a little less. Whether due process is satisfied must depend rather upon the quality and nature of the activity in relation to the fair and orderly *425 administration of the laius which it was the purpose of the due process clause to insure. That clause does not contemplate that a state may make binding a judgment in personam against an individual or corporate defendant with which the state has no contacts, ties, or relations.
“But to the extent that a corporation exercises the privilege of conducting activities within a state, it enjoys the benefits and protection of the laws of that state. The exercise of that privilege may give rise to obligations; and, so far as those obligations arise out of or are connected with the activities within the state, a procedure which requires the corporation to respond to a suit brought to enforce them can, in most instances, hardly be said to be undue.”
326 U.S. at 319-20, 66 S.Ct. 154 (citations omitted; emphasis added).
In World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980), the Supreme Court further explained:
“When a corporation ‘purposefully avails itself of the privilege of conducting activities within the forum State,’ Hanson v. Denckla, 357 U.S. [235] at 253 [ (1958) ], it has clear notice that it is subject to suit there, and can act to alleviate the risk of burdensome litigation .... Hence if the sale of a product of a manufacturer or distributor ... is not simply an isolated occurrence, but arises from the efforts of the manufacturer or distributor to serve, directly or indirectly, the market for its product in other States, it is not unreasonable to subject it to suit in one of those States if its allegedly defective merchandise has there been the source of injury to its owners or to others.”
(Emphasis added.)
In Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984), the Supreme Court further refined its personal-jurisdiction analysis by discussing two bases on which personal jurisdiction might rest. First, the Court stated:
“When a controversy is related to or ‘arises out of a defendant’s contacts with the forum, the Court has said that a ‘relationship among the defendant, the forum,' and the litigation’ is the essential foundation of in personam jurisdiction. Shaffer v. Heitner, 433 U.S. 186, 204 (1977).”
466 U.S. at 414 104 S.Ct. 1868 (footnote omitted). The Court further noted:
“It has been said that when a State exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant’s contacts with the forum, the State is exercising ‘specific jurisdiction’ over the defendant. See Von Mehren & Trautman, Jurisdiction to Adjudicate: A Suggested Analysis, 79 Harv. L.Rev. 1121, 1144-1164 (1966).”
466 U.S. at 414 n. 8, 104 S.Ct. 1868 (emphasis added).
Second, the Supreme Court stated:
“Even when the cause of action does not arise out of or relate to the foreign corporation’s activities in the forum State,[9] due process is not offended by a State’s subjecting the corporation to its in personam jurisdiction when there are sufficient contacts between the State and the foreign corporation. Perkins v. Benguet Consolidated Mining Co., 342 U.S. 437 (1952); see Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 779-780 (1984).
*426 466 U.S. at 414-16, 104 S.Ct. 1868; see also Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985); Ex parte Covington Pike Dodge, Inc., supra.
Owens Used Cars argues (1) that it did not have continuous and systematic contacts with Alabama so as to allow for general jurisdiction, and (2) that the plaintiffs’ causes of action do not arise out of Owens Used Cars’ contacts with Alabama so as to confer specific jurisdiction. We agree.
As to general jurisdiction, the materials before this Court indicate that Owens Used Cars’ only contacts with Alabama occurred during the mid-1980s. Although the level of those mid-1980s contacts might have been sufficient to fall within the parameters for general jurisdiction that are reflected in some of this Court’s precedents, see, e.g., Ex parte Lagrone, 839 So.2d 620 (Ala.2002); see also Ex parte McInnis, 820 So.2d at 810 (Lyons, J., writing specially, joined by See and Brown, JJ.), we conclude that those contacts are too remote in time from the accrual of the plaintiffs’ causes of action and the filing of the complaint to form a constitutionally satisfactory basis for general jurisdiction. Compare Ex parte Covington Pike Dodge, 904 So.2d at 231 (“Daniels’s affidavit establishes that at the time of the accident that is the subject of this litigation, Covington Pike did no business in the State of Alabama and had no presence or contacts in Alabama.” (emphasis added)), with, e.g., Metropolitan Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 569-70 (2d Cir. 1996) (“[0]ur review of general jurisdiction cases reveals that contacts are commonly assessed over a period of years prior to the plaintiffs filing of the complaint. ... In general jurisdiction cases, district courts should examine a defendant’s contacts with the forum state over a period that is reasonable under the circumstances — up to and including the date the suit was filed — to assess whether they satisfy the ‘continuous and systematic’ standard. The determination of what period is reasonable in the context of each case should be left to the court’s discretion.” (footnote omitted; emphasis added)).[5] Indeed, the plaintiffs have directed us to no case in which a court found general jurisdiction where there was a temporal gap between the defendant’s contacts and the accrual of the *427 cause of action or the filing of the complaint that was as extensive as the approximately 15-year temporal gap in the present case. Our research has discovered no such case.
Likewise, as to specific jurisdiction, although in the mid-1980s Owens Used Cars produced conversion vans based on specifications it received from Alabama automobile dealerships and employees of Owens Used Cars apparently delivered the conversion vans to those dealerships in Alabama, see Asahi Metal Indus. Co. v. Superior Court of California, 480 U.S. 102, 112, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987) (plurality opinion) (“Additional conduct of the defendant may indicate an intent or purpose to serve the market in the forum State, for example, designing the product for the market in the forum State ....” (emphasis added)), the plaintiffs’ causes of action do not “arise out of or relate to” alleged defects in one of the vans Owens Used Cars produced specifically for the Alabama market. See Burger King Corp., 471 U.S. at 472-73, 105 S.Ct. 2174 (noting that a defendant must have “fair warning” that his contacts with a state might subject him to the jurisdiction of that state’s courts: “Where a forum seeks to assert specific jurisdiction over an out-of-state defendant who has not consented to suit there, th[e] ‘fair warning’ requirement is satisfied if the defendant has ‘purposefully directed’ his activities at residents of the forum, ... and the litigation results from alleged injuries that ‘arise out of or relate to’ those activities.” (emphasis added)). Instead, the plaintiffs’ causes of action “arose out of and relate to” alleged defects in a van that Owens Used Cars sold in Georgia to O & M, a Georgia automobile dealership, which in turn sold the van to Frank, an Alabama resident. As to the van at issue, the plaintiffs failed to present any evidence indicating (1) that Owens Used Cars conducted any marketing activities in Alabama that might have enticed Frank to purchase the van[6] or (2) that O & M conducted marketing activities in Alabama and that Owens Used Cars had sufficient knowledge of or control over such Alabama marketing activities on O & M’s part so as to support a finding that Owens Used Cars sought to serve the Alabama market through the sale of its vans to O & M. See World-Wide Volkswagen Corp., 444 U.S. at 297, 100 S.Ct. 559; Burger King Corp., supra; Ex parte Troncalli Chrysler Plymouth Dodge, Inc., 876 So.2d 459 (Ala. 2003).

Conclusion

Based on the foregoing, Owens Used Cars’ petition for a writ of mandamus is hereby granted. The trial court is directed to vacate its order denying Owens Used Cars’ motion to dismiss for lack of personal jurisdiction and to enter an order granting the motion to dismiss, without prejudice.
Also, the plaintiffs have argued that the petition for a writ of mandamus is frivolous, and they have requested that we award them attorney fees and expenses. We deny this request.
PETITION GRANTED; WRIT ISSUED.
WOODALL, STUART, BOLIN, and PARKER, JJ., concur.
*428 MURDOCK, J., concurs in the rationale in part and concurs in the result.
COBB, C.J., and SEE, LYONS, and SMITH, JJ., concur in the result.

. Phil Owens stated in his deposition testimony that Owens Used Cars' other business records were destroyed in 2001, when it sold the property on which it had performed its conversion-van work.

. The plaintiffs assert, based on an affidavit from Farrel Bruce (a former employee of Ray Hughes Chevrolet, an automobile dealership in southeast Alabama), that in 1985 Owens Used Cars delivered an additional 21 vans to Ray Hughes Chevrolet, a third Alabama automobile dealership, and that, based on the fact that the names of other dealerships appear both on the ledger records and on a printout of an Internet search result attached to the plaintiffs’ brief to this Court, Owens Used Cars delivered automobiles to other Alabama automobile dealerships as well. It does not appear, however, that either Bruce’s affidavit, which bears a style for this Court and not the trial court, or the Internet search result was presented to the trial court. Phil Owens did testify in his deposition that, in addition to the two dealerships discussed in the text “there’s probably some more [Alabama dealerships that purchased vans from Owens Used Cars], but I don't recall no more.” In light of the foregoing and for purposes of resolving the personal-jurisdiction issue, we have considered the sales to the two Alabama dealerships specifically identified by Phil Owens and the fact that the trial court could have properly concluded that there were "probably more” sales to Alabama dealerships; we have not considered information from Bruce's affidavit or the Internet search result.

. Courts have struggled with the fact-dependent nature of the personal-jurisdiction inquiry for some time. As Judge Learned Hand lamented when he attempted to apply the "presence” test for personal jurisdiction, "[i]t is quite impossible to establish any rule from the decided cases; we must step from tuft to tuft across the morass.” Hutchinson v. Chase & Gilbert, Inc., 45 F.2d 139, 142 (2d Cir. 1930); see, e.g., Echeveny v. Kellogg Switchboard & Supply Co., 175 F.2d 900, 902-03 (2d Cir. 1949) ("The published decisions on what constitutes ‘doing business' in a State by a foreign corporation are literally legion. Yet, in spite of this vast array of judicial authority, border-line cases still have to be decided each on its own peculiar set of facts, which too often cannot be fitted into a stereotyped pattern. In this field, realism, not formalism, should be dominant; the problem must be solved in the light of commercial actuality, not in the aura of juristic semantics.”).

. "A writ commanding the sheriff to take the defendant into custody to ensure that the defendant will appear in court.” Black’s Law Dictionary 221 (8th ed.2004).

''9When a State exercises personal jurisdiction over a defendant in a suit not arising out of or related to the defendant’s contacts with the forum, the State has been said to be exercising ‘general jurisdiction’ over the de *426 fendant. See Brilmayer, How Contacts Count: Due Process Limitations on State Court Jurisdiction, 1980 S.Ct. Rev. 77, 80-81; Von Mehren & Trautman, 79 Harv. L.Rev., at 1136-1144; Calder v. Jones, 465 U.S. [783] at 786 [(1984)]."

. Whether, for purposes of general jurisdiction, the pertinent time period for reviewing a defendant’s contacts with the forum state should be measured in relation to the accrual of a plaintiff's cause of action, see Ex parte Covington Pike Dodge, supra, or in relation to the filing of the complaint, see Metropolitan Life, supra, does not appear to have been at issue in Ex parte Covington Pike Dodge. See also generally Charles W. Rhodes, Clarifying General Jurisdiction, 34 Seton Hall L.Rev. 807, 893-98 (2004) (proposing, as to general jurisdiction, that a proper understanding of the principles underlying the Supreme Court's post-International Shoe precedents would, in part, use the following test: “[I]f the court determines the defendant’s forum conduct includes those qualitatively substantial activities that may define a commercial domiciliary, the court should next discern whether such activities occurred in a comparable frequency to at least some local businesses over a reasonable period of time preceding the service of summons. If so, the requisite minimum contacts exist for general jurisdiction.”). In order to decide the present case, we need not decide whether Ex parte Covington Pike Dodge or Metropolitan Life represents the correct statement of law as to the proper time at which to assess the defendant’s contacts for purposes of general jurisdiction; Owens Used Cars’ contacts are insufficient under either approach.

. As discussed above, the materials before this Court reflect that the only activity Owens Used Cars directed at Alabama was in response to specific orders from Alabama businesses for vans; the materials reflect no relationship between such activities and the plaintiffs’ causes of action.