WISE, Justice.
 
 [1]
 

 The plaintiff, Branded Trailer Sales, Inc. (“Branded”), appeals from a judgment of the Tuscaloosa Circuit Court, granting a motion to dismiss asserting lack of personal jurisdiction filed by one of the defendants, Universal Truckload Services, Inc. (“Universal”). We reverse and remand.
 

 Facts and Procedural History
 

 In its complaint instituting the underlying action, Branded alleged that, in late March or early April 2008, a customer
 
 [2]
 
 contacted Branded about having flatbed trailers designed and manufactured to haul
 
 *406
 
 wind towers; that Universal was a trucking company that was in the business of hauling wind towers for that customer; that Universal needed to purchase trailers that were specially manufactured to haul wind towers; and that Branded subsequently contacted Universal.
 
 [3]
 
 Branded is a Louisiana corporation; Universal is a Michigan corporation. Branded further alleged that it subsequently contacted Lid-dell Trailers, LLC (“Liddell”), which is an Alabama corporation, and several other manufacturers of trailers about the cost of designing and manufacturing such specialized trailers; that it presented Universal with several different options; that Universal chose Liddell to design and manufacture the trailers; and that Branded entered into a contract with Liddell that provided that Liddell would design and manufacture the trailers at a cost to Branded of $168,680 each. Branded further alleged that it entered into a contract with Universal that provided that Universal would purchase two trailers from it at a price of $244,465.84 each; that Universal had the option to order up to eight more trailers; and that the first two trailers were to be delivered to Universal by the first week of August 2008.
 

 Branded alleged that, “[s]oon thereaf-tei*,” Liddell notified Branded that the cost of the trailers would be increased, that the completion date for the trailers would be extended, and that it would not build the trailers in accordance with the previously agreed upon design. Branded also alleged that Universal subsequently terminated the agreement to purchase the trailers from Branded. Branded further alleged that it subsequently learned that Universal and Liddell entered into an agreement pursuant to which Universal would purchase directly from Liddell the trailers it had agreed to design and manufacture; that Universal and Liddell excluded Branded from the agreement; that Liddell delivered the first two trailers to Universal in late December 2008 or early January 2009; and that Branded did not receive a sales commission based on the transaction.
 

 On February 2, 2009, Branded filed a complaint in the Tuscaloosa Circuit Court, alleging that Universal and Liddell had each “intentionally interfered with contract and the business relationship between [Branded] and the other Defendant, without justification, to make the transaction relating to the trailers more financially rewarding”; that Liddell had violated the Alabama Sales Representatives Commission Act; that Universal had engaged in fraud because it “innocently, recklessly or intentionally misrepresented that it would purchase the two (2) trailers to be manufactured by Liddell through [Branded]”; that Liddell had engaged in fraud because it “innocently, recklessly or intentionally misrepresented that it would manufacture the two (2) trailers to be purchased by Universal through [Branded]”; that Lid-dell breached its contract with Branded when it did not deliver the trailers; and that Universal breached its contract with Branded when it refused to purchase the trailers from Branded.
 

 On March 23, 2009, Universal filed a Rule 12(b)(2), Ala. R. Civ. P., motion to dismiss for lack of personal jurisdiction. On May 28, 2009, Universal filed a brief in support of its motion to dismiss and a supporting affidavit from Mike Peterson, the director of Risk Management for Universal. In that affidavit, Peterson stated:
 

 
 *407
 
 “3. [Universal] is a primarily non-asset based provider of transportation services to shippers in the United States and in the Canadian provinces of Ontario and Quebec. [Universales headquarters and corporate and administrative functions are located in Warren, Michigan.
 

 “4. [Universal] is a business corporation organized, incorporated, and existing pursuant to the laws of the State of Michigan. [Universal] is not registered or qualified to do business in Alabama as a foreign corporation, does not have any registered agent in Alabama, and does not maintain any offices in Alabama.
 

 “5. [Universal] does not have any officers, employees, or directors living in Alabama.
 

 “6. [Universal] does not have any agents that do business in Tuscaloosa County or in the state of Alabama, and does not have any agents that regularly solicit business in Tuscaloosa County or in the state of Alabama.
 

 “7. [Universal] does not conduct any business in Tuscaloosa County or in the state of Alabama on a regular basis, does not have any customers in Alabama for whom it regularly performs any work or services, and does not regularly transport or deliver any goods, products, or equipment into Alabama for any of its customer.
 

 “8. [Universal] does not own, rent, or lease any real or personal property in Alabama.
 

 “9. [Universal] does not maintain any offices or places of business in Alabama, and does not have or maintain any assets in Alabama.
 

 “10. [Universal] does not maintain any telephone numbers in Alabama, and does not maintain any facsimile numbers in Alabama.
 

 “11. [Universal] does not maintain any bank accounts or business records in Alabama.
 

 “12. I have reviewed information regarding the allegations of the complaint filed by Branded Trailer Sales and the business records related to those allegations. Based on my review of that information, I can make the following statements on behalf of [Universal].
 

 “13. No meetings occurred between representatives of [Universal] and representatives of Branded Trailer Sales in Alabama.
 

 “14. No representatives of [Universal] placed any telephone calls to Branded Trailer Sales or its representatives in Alabama, or made any such calls from Alabama.
 

 “15. No representatives of [Universal] sent any facsimile correspondence to Branded Trailer Sales or its representatives in Alabama, or sent any such correspondence from Alabama.
 

 “16. No representatives of [Universal] sent any email correspondence to Branded Trailer Sales or its representatives in Alabama, or sent any such correspondence from Alabama.
 

 “17. No representative of [Universal] had any dealings with Branded Trailer Sales or its representatives that took place in Alabama, or were otherwise directed at Alabama.
 

 “18. [Universal] did not enter into contracts with Branded Trailer Sales, Inc., in Alabama, or any contracts that were to be performed in Alabama.
 

 “Therefore, Branded has not shown that Universal itself has sufficient general contacts with Alabama to establish personal jurisdiction.”
 

 On May 29, 2009, Branded filed a response to Universal’s motion to dismiss, as well as a motion to strike its brief and
 
 *408
 
 Peterson’s affidavit; it also filed a motion pursuant to Rule 56(f), Ala. R. Civ. P., asking the court to treat Universal’s motion to dismiss as one for a summary judgment and to allow it to conduct additional discovery. In support of its May 29, 2009, response, Branded attached an affidavit from Wayne Ostrander. In his affidavit, Ostrander stated:
 

 “1. My name is Wayne Ostrander and I am over 19 years of age. I work for Branded Trailer Sales and I have personal knowledge of the facts stated herein.
 

 “2. [Universal] contacted [Branded] and requested that [Branded] find a company to manufacture a trailer to certain specifications. After [Branded] presented [Universal] with several options, [Universal] chose Liddell Trailers, LLC (‘Liddell’) to build the trailers.
 

 “3. Liddell is a company registered in Alabama with its principle [sic] place of business in Springville, AL.
 

 “4. Pursuant to the agreement between Liddell, [Branded], and [Universal], Liddell would build the trailers in Alabama.
 

 “5. Liddell and [Universal] both informed [Branded] that they would not uphold their existing agreements. [Branded] later learned that [Universal] agreed to purchase and Liddell agreed to manufacture the trailers, thereby excluding [Branded].
 

 “6. In order to facilitate this later deal, [Universal] had to make contact with Alabama numerous times. The wrongdoing made the basis of this complaint was therefore projected toward Alabama.
 

 “7. At the completion of the deal between [Universal] and Liddell, [Universal] took possession of the trailers in Alabama.”
 

 In Branded’s Rule 56(f) motion, Branded stated that it had filed a motion to strike Universal’s brief in support of the motion to dismiss and to strike Peterson’s affidavit. It then stated:
 

 “In the event that this Court denied [Branded]’s motion to strike [Univer-salis brief and affidavit, filed contemporaneously hereto, and treats [Univer-salis motion to dismiss as a motion for summary judgment, [Branded] will require additional time to, among other things conduct discovery and oppose [Universalis motion for summary judgment. Particularly, [Branded] would require time to depose the affiant whose affidavit is attached to the brief titled
 
 Defendant Universal Truckload Services, Ina’s Brief in Support of its Rule 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction.”
 

 On June 2, 2009, the trial court conducted a hearing on Universal’s motion to dismiss. However, the record does not include a transcript of that hearing. On June 17, 2009, Universal filed a supplemental brief in support of its motion to dismiss and a second affidavit from Peterson. On that same date, Branded filed a response to Universal’s brief in support of its motion to dismiss. That response also included a request for additional time to conduct discovery. In that request, Branded stated:
 

 “[I]n the event that this Court determines sufficient contacts have not been demonstrated to overcome due process, [Branded] asks that this court allow additional time to conduct discovery. While this brief outlines numerous contacts between [Universal] and Alabama, [Branded] is confident that through discovery, it will uncover many more contacts and be able to describe such contacts in greater detail. As in the case of
 
 Ex parte Bufkin,
 
 [Branded], at mini
 
 *409
 
 mum, has ‘at least alleg[ed] facts that would support a
 
 colorable claim
 
 of jurisdiction.’
 
 Ex parte Bufkin,
 
 936 So.2d 1042, 1047 (Ala.2006). Therefore, ‘Limited discovery could flesh out [the plaintiffs] allegations and could lead to a conclusion that the trial court can exercise personal jurisdiction over [the defendant].’
 
 Id.
 

 “The Alabama Supreme Court has ruled that although the plaintiff bears the burden of demonstration, the court should assist the plaintiff and allow the plaintiff to conduct jurisdictional discovery unless their claim is clearly frivolous.
 
 Id., quoting Toys ‘R’ Us, Inc. v. Step Two, S.A.,
 
 318 F.3d 446, 456 (3d Cir.2003).
 

 “ ‘Although the plaintiff bears the burden of demonstrating facts that support personal jurisdiction,
 
 Pinker [v. Roche Holdings Ltd.,
 
 292 F.3d 361, 368 (3rd Cir.2002) ], courts are to assist the plaintiff by allowing jurisdictional discovery unless the plaintiffs claim is “clearly frivolous,”
 
 Massachusetts School of Law at Andover, Inc. v. American Bar Ass’n,
 
 107 F.3d 1026, 1042 (3d Cir.1997). If a plaintiff presents facial allegations that suggest “with reasonable particularity” the possible existence of the requisite “contacts between [the party] and the forum state,”
 
 Mellon Bank (East) PSFS, Nat’l Ass’n v. Farino,
 
 960 F.2d 1217, 1223 (3d Cir.1992), the plaintiffs right to conduct jurisdictional discovery should be sustained.’
 

 “[Branded]’s demonstration of personal jurisdiction is accurate and sufficient. However, if this Court requires additional contacts shown, such deficiency can be filled with detail through discovery. This case for personal jurisdiction is by no means ‘clearly frivolous.’ ”
 

 On June 29, 2009, the trial court entered the following order:
 

 “On June 2nd 2009 this court heard arguments on [Universal’s] motion to dismiss and [Branded’s] motion to strike brief and affidavit. [Branded] requested for a continuance of the hearing and it was denied.
 

 “This court hereby denies [Branded’s] motion to strike brief and affidavit and finds that [Universal’s] motion to dismiss is well taken and is hereby granted. “Wherefore, it is hereby Ordered, Adjudged and Decreed that [Universal’s] motion to dismiss is granted and Universal Truckload Services, Inc. is hereby dismissed. This case shall proceed against the remaining defendant.”
 

 On July 29, 2009, the trial court entered an order certifying its June 29, 2009, order as a final judgment.
 
 [4]
 
 This appeal followed.
 

 Standards of Review
 

 “ ‘ “ ‘An appellate court considers de novo a trial court’s judgment on a party’s motion to dismiss for lack of personal jurisdiction.’”
 
 Ex parte Lagrone,
 
 839 So.2d 620, 623 (Ala.2002) (quoting
 
 Elliott v. Van Kleef
 
 830 So.2d 726, 729 (Ala.2002)). Moreover, “[t]he plaintiff bears the burden of proving the court’s personal jurisdiction over the defendant.”
 
 Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.,
 
 290 F.3d 42, 50 (1st Cir.2002).’
 

 “Ex parte Dill, Dill, Carr, Stonbraker & Hutchings, P.C.,
 
 866 So.2d 519, 525 (Ala.2003).
 

 “ ‘ “In considering a Rule 12(b)(2), Ala. R. Civ. P., motion to
 
 *410
 
 dismiss for want of personal jurisdiction, a court must consider as true the allegations of the plaintiffs complaint not controverted by the defendant’s affidavits,
 
 Robinson v. Giarmarco & Bill, P.C.,
 
 74 F.3d 253 (11th Cir.1996), and
 
 Cable/Home Communication Corp. v. Network Productions, Inc.,
 
 902 F.2d 829 (11th Cir.1990), and ‘where the plaintiffs complaint and the defendant’s affidavits conflict, the ... court must construe all reasonable inferences in favor of the plaintiff.’
 
 Robinson,
 
 74 F.3d at 255 (quoting
 
 Madara v. Hall,
 
 916 F.2d 1510, 1514 (11th Cir.1990)).” ’
 

 “Wenger Tree Serv. v. Royal Truck & Equip., Inc.,
 
 853 So.2d 888, 894 (Ala.2002) (quoting
 
 Ex parte McInnis,
 
 820 So.2d 795, 798 (Ala.2001)). However, if the defendant makes a prima facie evi-dentiary showing that the Court has no personal jurisdiction, ‘the plaintiff is then required to substantiate the jurisdictional allegations in the complaint by affidavits or other competent proof, and he may not merely reiterate the factual allegations in the complaint.’
 
 Mercantile Capital, LP v. Federal Transtel, Inc.,
 
 193 F.Supp.2d 1243, 1247 (N.D.Ala.2002) (citing
 
 Future Tech. Today, Inc. v. OSF Healthcare Sys.,
 
 218 F.3d 1247, 1249 (11th Cir.2000)). See also
 
 Hansen v. Neumueller GmbH,
 
 163 F.R.D. 471, 474-75 (D.Del.1995)(‘When a defendant files a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(2), and supports that motion with affidavits, plaintiff is required to controvert those affidavits with his own affidavits or other competent evidence in order to survive the motion.’) (citing
 
 Time Share Vacation Club v. Atlantic Resorts, Ltd.,
 
 735 F.2d 61, 63 (3d Cir.1984)).
 

 “ ‘ “A physical presence in Alabama is not a prerequisite to personal jurisdiction over a nonresident.”
 
 Sieber v. Campbell,
 
 810 So.2d 641, 644 (Ala.2001). What is required, however, is that the defendant have such contacts with Alabama that it “ ‘should reasonably anticipate being haled into court [here].’ ”
 
 Dillon Equities v. Palmer & Cay, Inc.,
 
 501 So.2d 459, 462 (Ala.1986) (quoting
 
 World-Wide Volkswagen Corp. v. Woodson,
 
 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)).
 

 “‘Depending on the quality and quantity of the contacts, jurisdiction may be either general or specific.
 
 Leventhal v. Harrelson,
 
 723 So.2d 566, 569 (Ala.1998). “General jurisdiction applies where a defendant’s activities in the forum state are ‘substantial’ or ‘continuous and systematic,’ regardless of whether those activities gave rise to the lawsuit.... A court has specific jurisdiction when a defendant has had few contacts with the forum state, but those contacts gave rise to the lawsuit.”
 
 Id.
 

 “ ‘But regardless of whether jurisdiction is alleged to be general or specific, the nexus between the defendant and the forum state must arise out of “ ‘an action of the defendant [that was] purposefully directed toward the forum State.’ ”
 
 Elliott [v. Van Kleef,
 
 830 So.2d 726, 731 (Ala.2002) ] (quoting
 
 Asahi Metal Indus. Co. v. Superior Court of California,
 
 480 U.S. 102, 112, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987)). “This purposeful-availment requirement assures that a defendant will not be haled into a jurisdiction as a result of ‘ “the unilateral activity of another person or a third person.” ’ ”
 
 Elliott,
 
 830 So.2d at 731 (quoting
 
 Burger King Corp. v.
 
 
 *411
 

 Rudzewicz,
 
 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)).’
 

 “Dill,
 
 866 So.2d at 525-26 (emphasis omitted).”
 

 Ex parte Covington Pike Dodge, Inc.,
 
 904 So.2d 226, 229-30 (Ala.2004) (footnote omitted).
 

 Discussion
 

 Branded argues that the trial court erred in granting Universal’s motion to dismiss without first giving it the opportunity to conduct jurisdictional discovery. We note:
 

 “ ‘ “The trial court has broad and considerable discretion in controlling the discovery process and has the power to manage its affairs ... to ensure the orderly and expeditious disposition of cases.” ’
 
 Ex parte Vulcan Materials Co.,
 
 992 So.2d 1252, 1259 (Ala.2008) (quoting
 
 Salser v. K.I.W.I., S.A.,
 
 591 So.2d 454, 456 (Ala.1991)). ‘Therefore, this Court will not interfere with a trial court’s ruling on a discovery matter unless this Court “ ‘determines, based on all the facts that were before the trial court, that the trial court clearly [exceeded] its discretion.’ ” ’
 
 Id.
 
 (quoting
 
 Ex parte Henry,
 
 770 So.2d 76, 80 (Ala.2000), quoting in turn
 
 Ex parte Horton,
 
 711 So.2d 979, 983 (Ala.1998)).”
 

 Brown v. ABUS Kransysteme GmbH,
 
 11 So.3d 788, 795 (Ala.2008).
 

 In
 
 Ex parte Bufkin,
 
 936 So.2d 1042, 1047-48 (Ala.2006), this Court addressed the issue whether a plaintiff was entitled to jurisdictional discovery:
 

 “In
 
 Ex parte Troncalli Chrysler Plymouth Dodge, Inc.,
 
 [876 So.2d 459 (Ala.2003),] a case involving discovery on the question of jurisdiction, this Court said:
 

 “ ‘ “ ‘It is well established that a ... court has the power to require a defendant to respond to discovery requests relevant to his or her motion to dismiss for lack of jurisdiction.’ ”
 
 Andersen v. Sportmart, Inc.,
 
 179 F.R.D. 236, 241 (N.D.Ind.1998) (quoting
 
 Ellis v. Fortune Seas, Ltd.,
 
 175 F.R.D. 308, 311 (S.D.Ind.1997)). “However, it is also well established that a plaintiff does not enjoy an automatic right to discovery pertaining to personal jurisdiction in every case.”
 
 Id.
 
 “[T]o be permitted jurisdictional discovery, [a] plaintiff must at least
 
 allege facts
 
 that would support a
 
 colorable claim
 
 of jurisdiction.”
 
 Schenck v. Walt Disney Co.,
 
 742 F.Supp. 838, 840 n. 1 (S.D.N.Y.1990) (emphasis added). See also
 
 Ellis v. Fortune Seas, Ltd.,
 
 175 F.R.D. 308, 312 (S.D.Ind.1997);
 
 Hansen v. Neumueller GmbH,
 
 163 F.R.D. 471, 475 (D.Del.1995);
 
 Daval Steel Prods. v. M.V. Juraj Dalmatinac,
 
 718 F.Supp. 159, 162 (S.D.N.Y.1989);
 
 Rich v. KIS California, Inc.,
 
 121 F.R.D. 254, 259 (M.D.N.C.1988).
 

 “ ‘A request for jurisdictional discovery must offer the court “more than conjecture and surmise in support of [the] jurisdictional theory.”
 
 Crist v. Republic of Turkey,
 
 995 F.Supp. 5, 13 (D.D.C.1998). “[The] standard is quite low, but a plaintiffs discovery request will nevertheless be denied if it is only based upon ‘bare,’ ‘attenuated,’ or ‘unsupported’ assertions of personal jurisdiction, or when a plaintiffs claim appears to be ‘clearly frivolous.’ ”
 
 Andersen,
 
 179 F.R.D. at 242.’
 

 “876 So.2d at 467-68.
 

 “In
 
 Troncalli,
 
 we held that the plaintiffs discovery request presented ‘nothing but “conjecture and surmise” regarding the existence of general jurisdiction,’ 876 So.2d at 468, and was therefore due to be denied. Unlike the complaint in
 
 Troncalli,
 
 which was
 
 *412
 
 devoid of allegations necessary to sustain personal jurisdiction, the complaint in this proceeding alleges that ‘[Bufkin] was the agent, servant or employee of [Williamson] and/or was involved in a joint venture with [Williamson].’ Williamson, of course, is a resident of Alabama. Bufkin admits in his affidavit that he visited Alabama during the month in which the accident occurred, and it is undisputed that Bufkin was driving Williamson’s truck at the time of the accident. Therefore, in contrast to the situation presented this Court in
 
 Troncalli
 
 Roberts has ‘at least
 
 alleged] facts
 
 that would support a
 
 col-orable claim
 
 of jurisdiction.’ 876 So.2d at 468. Limited discovery could flesh out Roberts’s allegations and could lead to a conclusion that the trial court can exercise personal jurisdiction over Bufkin.
 

 “The allegations before us in this proceeding are distinguishable from those in
 
 Troncalli
 
 and they justify a less restrictive approach to allowing jurisdictional discovery. We embrace the rule applicable in such circumstance as expressed in
 
 Toys 'R’ Us, Inc. v. Step Two, S.A.,
 
 318 F.3d 446, 456 (3d Cir.2003):
 

 “ ‘Although the plaintiff bears the burden of demonstrating facts that support personal jurisdiction,
 
 Pinker [v. Roche Holdings Ltd.,
 
 292 F.3d 361, 368 (3rd Cir.2002) ], courts are to assist the plaintiff by allowing jurisdictional discovery unless the plaintiffs claim is “clearly frivolous.”
 
 Massachusetts School of Law at Andover, Inc. v. American Bar Ass’n,
 
 107 F.3d 1026, 1042 (3d Cir.1997). If a plaintiff presents factual allegations that suggest “with reasonable particularity” the possible existence of the requisite “contacts between [the party] and the forum state,”
 
 Mellon Bank (East) PSFS, Nat’l Ass’n v. Farino,
 
 960 F.2d 1217, 1223 (3d Cir.1992), the plaintiffs right to conduct jurisdictional discovery should be sustained.
 

 “ ‘Where the plaintiff has made this required threshold showing, courts within this Circuit have sustained the right to conduct discovery before the district court dismisses for lack of personal jurisdiction. See, e.g.,
 
 In re Automotive Refinishing Paint Antitrust Litigation,
 
 [No. 1426, July 31, 2002] (E.D.Pa. July 31, 2002) [not reported in F.Supp.2d] (denying motion to dismiss and permitting jurisdictional discovery where plaintiff made a “threshold prima facie showing of personal jurisdiction over Defendants”); W.
 
 Africa Trading & Shipping Co., et al. v. London Int’l Group, et al.,
 
 968 F.Supp. 996, 1001 (D.N.J.1997) (denying defendant’s motion to dismiss where the plaintiffs’ “request for jurisdictional discovery is critical to the determination of whether [the court can] exercise personal jurisdiction over the defendant.”);
 
 Centralized Health Systems, Inc. v. Cambridge Medical Instruments, Inc.,
 
 [No. 89-3322, Nov. 8, 1989] (E.D.Pa. Nov. 8, 1989) [not reported in F.Supp.] (holding motion to dismiss in abeyance to permit party to take discovery on jurisdiction where distribution arrangement might satisfy minimum contacts).’
 

 “Without affording Roberts the opportunity for limited discovery on the issue of personal jurisdiction, we will not at this stage of the proceeding grant the writ of mandamus and order Bufkin’s dismissal from the action.”
 

 Similarly, in this case, Branded has alleged sufficient facts that could establish a colorable claim of personal jurisdiction against Universal.
 

 
 *413
 
 In its response to Universal’s motion to dismiss, Branded alleged the following facts:
 
 [5]
 

 “1) [Universal] is a large, publicly traded, international company that does business in all lower 48 states. [Universal] asserts through the World Wide Web on its official website that it provides ‘transportation services to shippers throughout the United States.’
 
 Universal Truckload Services, Inc., available at
 
 http://www.goutsi.com/ (last visited May 28, 2009).
 

 “2) One of [Universal]’s subsidiaries, Mason Dixon Lines, asserts through the World Wide Web on its website that ‘it has expanded its operations from its “North and South” beginning to include 48 states.’
 
 The Mason Dixon Lines, available at
 
 http://www.madl.com/ (last visited on May 28, 2009).
 

 “3) In addition to doing business in Alabama, [Universal] acquired the operations of an Alabama truckload carrier Noble & Pitts, Inc. based [in] Scotts-boro, AL in or around 2006.
 

 “4) [Universal] contacted [Branded] and requested that [Branded] find a company to manufacture a trailer to certain specifications. After [Branded] presented [Universal] with several options, [Universal] chose Liddell Trailers, LLC (‘Liddell’) to build the trailers. (Aff. of Wayne Ostrander ¶ 2, attached hereto as Exhibit A.)
 

 “5) Liddell is a company registered in Alabama with its principle [sic] place of business in Springville, AL. (Exhibit A, Ostrander Aff. ¶ 3.)
 

 “6) Pursuant to the agreement between Liddell, [Branded], and [Universal], Liddell agreed to build the trailers in Alabama. (Exhibit A, Ostrander Aff. ¶ 4.)
 

 “7) Liddell and [Universal] both informed [Branded] that they would not uphold their existing agreements. [Branded] later learned that [Universal] agreed to purchase and Liddell agreed to manufacture the trailers, thereby excluding [Branded]. (Exhibit A, Ostran-der Aff. ¶ 5.)
 

 “8) In order to facilitate this later deal, [Universal] had to make contact ■with Alabama numerous times. The wrongdoing made the basis of this complaint was therefore projected toward Alabama. (Exhibit A, Ostrander Aff. ¶ 6.)
 

 “9) At the completion of the deal between [Universal] and Liddell, [Universal] took possession of the trailers in Alabama. (Exhibit A, Ostrander Aff. ¶ 7.)
 

 “10) [Universal] is a large company that has sufficient contacts with Alabama. Not only do they conduct regular business in Alabama, but with respect to this case, they have directed their action toward Alabama.
 

 “11) The Alabama Supreme Court states in the case
 
 Ex parte DBI, Inc.
 
 that Alabama’s long arm statute extends the jurisdiction of Alabama courts to the permissible limits of due process. [23 So.3d 635, 643 (Ala.2009)] (‘In accordance with the plain language of Rule 4.2, both before and after the 2004 amendment, Alabama’s long-arm rule consistently has been interpreted by this Court to extend the jurisdiction of Alabama courts to the permissible limits of due process.’).
 

 “The Supreme Court goes on to say that Due Process permits Alabama to
 
 *414
 
 subject a nonresident defendant to its jurisdiction when there exists sufficient ‘minimum contacts,’ such that a defendant should reasonably anticipate being haled into court. [23 So.3d at 644].
 

 “
 
 ‘The Due Process Clause of the Fourteenth Amendment
 
 permits a forum state to subject a nonresident defendant to its courts only when that defendant has sufficient “minimum contacts” with the forum state.
 
 International Shoe Co. v. Washington,
 
 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). The critical question with regard to the nonresident defendant’s contacts is whether the contacts are such that the nonresident defendant “ ‘should reasonably anticipate being haled into court’ ” in the forum state.
 
 Burger King Corp. v. Rudzewicz,
 
 471 U.S. 462, 473, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985), quoting
 
 World-Wide Volkswagen Corp. v. Woodson,
 
 444 U.S. 286, 295, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980).’
 

 “The Court has framed this discussion as one of reasonableness and fairness; asking whether it is reasonable or fair to bring such defendant into court. [23 So.3d at 650-51].
 

 “ ‘The protection against inconvenient litigation is typically described in terms of “reasonableness” or “fairness.” We have said that the defendant’s contacts with the forum State must be such that maintenance of the suit does not offend “traditional notions of fair play and substantial justice.” The relationship between the defendant and the forum must be such that it is “reasonable ... to require the corporation to defend the particular suit which is brought there.” (citations omitted).’
 

 “However, due to modern transportation and communication, the ‘limits imposed on state jurisdiction by the Due Process Clause, in its role as a guarantor against inconvenient litigation, have been substantially relaxed.’ [23 So.3d at 650].
 

 “Furthermore, where a defendant has ‘purposely availed’ himself of the privilege of conducting business in Alabama, it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum. [23 So.3d at 654],
 

 ‘“[W]here the defendant “deliberately” has engaged in significant activities within a State, or has created “continuing obligations” between himself and residents of the forum, he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by “the benefits and protections” of the forum’s laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well, (citations omitted).’
 

 “Therefore, when the defendant has ‘purposefully directed’ his actions toward residents of Alabama, the defendant must present a compelling case that some other consideration would render jurisdiction unreasonable. [23 So.3d at 653-54]. (‘[W]here a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable.’).
 

 “12) In the present case, [Branded] has presented ample evidence that [Universal] has sufficient contacts with the State of Alabama, and, as a result of [its] actions, [Universal] should reasonably expect to be haled into Alabama court. Furthermore, [Universal] has purposely
 
 *415
 
 availed itself [of] the privilege of conducting business in Alabama.
 

 “[Universal] is a large publicly traded company with stockholders around the country. Through [its] marketing [on] the World Wide Web, [Universal] has held itself out as a company conducting business in Alabama. [Universal] agreed to do business with a company in Alabama and the current allegations surround [Universal’s] contact with a company residing in Alabama. The wrong alleged in this complaint is based on [Universal’s] act of contacting Lid-dell, in Alabama. Furthermore, [Universal] went to Alabama to pick up the trailers.
 

 “[Universal] has presented no evidence, compelling or otherwise, of the presence of ‘some other considerations [that] would render jurisdiction unreasonable.’ [23 So.3d at 654]. In fact, [Universal] has not presented one shred of evidence or pointed to one fact showing how [Universal] will be burdened by defending this case in Alabama. The only benefit to [Universal] in excluding jurisdiction is to delay justice. [Universal is] already represented by a firm in Tuscaloosa, Alabama. Defending this case in Alabama would be not more burdensome than defending it in Louisiana. As the Supreme Court points out, modern transportation and communication has helped to substantially relaxed any due process restraints. [23 So.3d at 657],
 

 “13) [Universal] has no Due Process argument for excluding personal jurisdiction. [It has] conducted business in Alabama, directed [its] actions to residents in Alabama, and [has] held [itself] out to the public as conducting business in Alabama. Therefore, jurisdiction is proper in this case.”
 

 Further, in its response to Universal’s brief in support of its Rule 12(b)(2) motion, Branded alleged:
 
 [6]
 

 “[Universal] contacted [Branded] and requested that [Branded] find a company to manufacture trailers to certain specifications. After [Branded] presented [Universal] with several options, [Universal] chose Liddell Trailers, LLC (‘Liddell’) to build the trailers. (Aff. of Wayne Ostrander ¶ 2, attached hereto as Exhibit A.) Liddell is a company registered in Alabama with its principle [sic] place of business in Springville, AL. (Exhibit A, Ostrander Aff. ¶ 3.) Pursuant to the agreement between Liddell, [Branded], and [Universal], Liddell agreed to build the trailers in Alabama. (Exhibit A, Ostrander Aff. ¶ 4.) Defendant Liddell agreed to design, manufac-turen, and sell said trailers to [Branded] for $168,680.00 each (Compl. ¶ 7), and [Universal] agreed to purchase at least two of these trailers at a price of $244,465.84. (Compl. ¶ 8.) Liddell and [Universal] both informed [Branded] that they would not uphold their existing agreements. (Compl.)
 

 “[Branded] later learned that [Universal] agreed to purchase and Liddell agreed to manufacture the trailers, thereby excluding [Branded], (Exhibit A, Ostrander Aff. ¶ 5.) In order to facilitate this later deal, [Universal] had to make contact with Alabama numerous times. The wrongdoing made the basis of this complaint was therefore projected toward Alabama. (Exhibit A, Os-trander Aff. ¶ 6.) At the completion of
 
 *416
 
 the deal between [Universal] and Lid-dell, [Universal] physically entered Alabama and physically took possession of the trailers in Alabama. (Exhibit A, Ostrander Aff. ¶ 7.)
 

 “[Universal] is a large, publicly traded, international company that does business in all lower 48 states. [Universal] identifies itself as a ‘non-asset based provider of transportation,’
 
 Universal Truckload Services, Inc., available at
 
 http://www.goutsi.com/ (last visited June 17, 2009) (attached hereto as Exhibit B), [Universal] markets its services to the state of Alabama and asserts that it does business in Alabama. [Universal] asserts through the World Wide Web on its official website that it provides ‘transportation services to shippers throughout the United States.’ Exhibit B. [Universal] solicits agents and contractors through the World Wide Web, including those agents and contractors located in Alabama.
 
 Universal Truckload Services, Inc., available at
 
 http:// www.goutsi.com/JoinUs.aspx (last visited June 17, 2009) (attached hereto as Exhibit C).
 

 “At any given time, [Universal] arranges numerous load pickups for locations throughout the state of Alabama. On June 11, 2009, [Universal] provided information through its official website of load pickup and drop-off locations throughout Alabama. These sites included, among other locations: Jasper, Scottsboro, Tuscaloosa, Courtland, Tal-ladega, Montgomery, Mount Meigs, Louisville, Eufaula, Selma, Jackson, Mobile, Tuscumbia, Belk, Moundville, Gray-son, Birmingham, Hanceville, Pelham, Millbrook, Huntsville, Decatur, Nauvoo.
 
 See for example, Universal Truckload Services, Inc., available at
 
 http://loads. goutsi.com:8080/wntv5/BKLoad Selections (last visited June 11, 2009) (attached hereto as Exhibit D). These locations provide the telephone numbers of [Universal] agents, many of whom are located in Alabama. [Universal] boasts on its official website that it ‘provides shippers with a network of hundreds of agents and thousands of owner-operators.’
 
 Universal Truckload Services, Inc, available at
 
 http://www.goutsi.com/ Shippers.aspx. (last visited June 17, 2009) (attached hereto as Exhibit E). Therefore, not only does [Universal] do business in Alabama, they have numerous agents throughout the state.
 

 “Furthermore, in 2006, [Universal] reported to
 
 Alabama Trucker,
 
 that [Universal] bought a major Alabama trucking company located in Scottsboro, Alabama.
 
 Alabama Trucker,
 
 3rd Quarter (2006),
 
 available at
 
 http://www. alabamatrucking.org/docs/AT7l_summer 3Q06_web.pdf (attached hereto as Exhibit F). (‘Universal Truckload Services officials said late Thursday it acquired the operations of Alabama truckload carrier Noble & Pitts’) ‘Noble & Pitts generated combined truckload and brokerage revenue of about $33 million [in 2005], including fuel surcharges of $3 million, Universal said in a statement’
 
 Id.
 

 “In addition to the fact that [Universal] conducts extensive business in .Alabama and has a broad network of business contacts in Alabama, [Universal] also conducts extensive business in Alabama through its subsidiaries. [Universal] acts as a non-asset based provider and conducts most of its business through its subsidiaries. Exhibit E,
 
 Universal Truckload Services, Inc., available at
 
 http://www.goutsi.com/ Shippers.aspx (‘We conduct our operations through our operating subsidiaries under the brand names: Mason and Dixon Lines, Mason Dixon Intermodal, Economy Transport, Louisiana Trans
 
 *417
 
 portation, Great American Lines, CrossRoad Carriers, and Universal Am-Can.’).
 

 “Mason Dixon Lines, asserts through its official website that ‘it has expanded its operations from its “North and South” beginning to include 48 states.’
 
 The Mason Dixon Lines, available at
 
 http://www.madl.com/ (last visited on May 28, 2009). Additionally, Mason Dixon Lines holds a permanent office in Scottsboro, Alabama. Mason Dixon In-termodal asserts through the World Wide Web that its does business in Alabama.
 
 Mason Dixon Intermodal, available at
 
 http://www.mdintermodal.com/ AboutUs.aspx (last visited June 17, 2009) (attached hereto as Exhibit G) (‘Operating with one of the finest groups of Owner-Operators in the country enables us to service 48 states, ... Mason Dixon Intermodal is a subsidiary of Universal Truckload Services, Inc.’). Likewise, Louisiana Transportation, Inc. boasts through the World Wide Web of the extensive business it conducts throughout the 48 states and of the national sales and recruiting force it maintains.
 
 Louisiana Transportation, Inc., available at
 
 http://www.louisiana transport.com/AboutUs.aspx (last visited June 17, 2009) (attached hereto as Exhibit H) (‘Louisiana Transportation, Inc., is an established over-the-road commercial carrier with brokerage authority serving 48 states with our focus on the Southern parts of the U.S.’) and (‘We have an established national sales and recruiting force integrated into an efficient back office support network with a proprietary computer system geared for the future.’).
 

 “Universal Am-Can, Ltd. and Great American Lines, Inc. market themselves to Alabama through the World Wide Web and also assert that they do business in Alabama. Universal Am-Can, Ltd. asserts through the World Wide Web, ‘Our services encompass Flatbed, Van, Over Dimensional and Logistic solutions throughout the United States, Canada, and Mexico. There are no limits when it comes to providing transportation solutions to fit you and or your customers needs.’
 
 Universal Am-Can. Ltd, available at
 
 http://www.uacl.com/ (last visited June 17, 2009) (attached hereto as Exhibit I). Furthermore, Universal Am-Can, Ltd. boasts of a ‘nationwide network of agents’ (Exhibit I) and state that they have a ‘carrier network of over 10,000 approved carriers throughout the United States and Canada.’
 
 Universal Am-Can, Ltd., available at
 
 http://www.uacl.com/Services.aspx (last visited June 17, 2009) (attached hereto as Exhibit J). Finally, Universal Am-Can states that it has a ‘network consisting of over 250 offices nationwide.’
 
 Universal Am-Can, Ltd., available at
 
 http://www.uacl.com/Brokerage. aspx (last visited June 17, 2009) (attached hereto as Exhibit K).
 

 “Great American Lines, Inc. asserts a nationwide presence and solicit business nationwide. They assert through the World Wide Web, ‘Our diversified agent and company terminal sales force are capable of accommodating any hauling preference an owner operator may have within these trailer types throughout the U.S. and Canada.’
 
 Great American Lines, Inc. available at,
 
 http://www. grtamerlines.com/AboutUs.aspx (last visited June 17, 2009) (attached hereto as Exhibit L). Finally, they boast of a ‘Freight Brokerage to carrier network throughout the U.S. using agent network.’
 
 Great American Lines, Inc, available at,
 
 http://www.grtamerlines. com/Services.aspx (last visited June 17,-2009) (attached hereto as Exhibit M).”
 

 
 *418
 
 Branded went on to argue that Universal itself had sufficient general contacts with Alabama to establish jurisdiction in Alabama.
 
 See Sverdrup Tech., Inc. v. Robinson,
 
 36 So.3d 34 (Ala.2009) (holding that a defendant that did business in and maintained corporate offices in Alabama had sufficient “ ‘continuous and systematic’ ” activities to establish general personal jurisdiction in Alabama). It also argued that Universal’s subsidiaries had sufficient general contacts with Alabama to establish personal jurisdiction in Alabama and that the subsidiaries’ contacts are attributable to Universal.
 
 See Environmental Waste Control, Inc. v. Browning-Ferris Indus., Inc.,
 
 711 So.2d 912, 916 (Ala.1997) (holding that the trial court erroneously granted a motion for a summary judgment filed by Browning-Ferris Industries, Inc. (“BFI, Inc.”), based on lack of personal jurisdiction where the record contained evidence indicating that BFI, Inc., had sufficient contacts with Alabama and where it was “not unreasonable to assume that it was ‘foreseeable’ that BFI, Inc., could be held liable for the conduct of its subsidiary”). Finally, Branded argued that Universal had sufficient specific contacts with Alabama to establish personal jurisdiction because, it says, its claims against Universal arose from the contacts between Universal and Alabama.
 
 See Hiller Invs. Inc. v. Insultech Group, Inc.,
 
 957 So.2d 1111 (Ala.2006) (holding that the trial court had personal jurisdiction over the defendant because the cause of action arose out of the defendant’s contacts with the State). Specifically, Branded asserts that
 

 “[t]he wrongful act alleged in this case is [Universal’s] act of going behind the back of [Branded] and contacting Lid-dell, in Alabama. [Universal’s] act of contacting Liddell in Alabama was therefore the precise act that harmed [Branded].”
 

 Additionally, Branded supported its jurisdictional arguments with an affidavit from Ostrander, with printouts from the Web sites of Universal and its subsidiaries, and with an article from
 
 Alabama Trucker,
 
 a trade publication.
 

 In this case, Branded made detailed assertions regarding its theories of personal jurisdiction, and it presented evidence to support those assertions.
 
 See Ex parte United Ins. Cos.,
 
 936 So.2d 1049 (Ala.2006) (holding that a plaintiff raising a civil-conspiracy claim was entitled to jurisdictional discovery because she presented detailed pleadings regarding the corporate relationship of the defendants and regarding the role each defendant allegedly played in the civil conspiracy). Therefore, this was not a situation where Branded’s discovery request was “ ‘based upon “bare,” “attenuated,” or “unsupported” assertions of personal jurisdiction’ ” or a situation where Branded’s claim appeared to be “ ‘ “clearly frivolous.” ’ ”
 
 Ex parte Troncalli Chrysler Plymouth Dodge, Inc.,
 
 876 So.2d 459, 468 (Ala.2003). Further, unlike the request in
 
 Ex parte Troncalli,
 
 Branded’s discovery request did not consist of mere conjecture and surmise.
 
 See United Ins. Cos.,
 
 supra. Rather, Branded has
 

 “ ‘at least
 
 alleg[ed] facts
 
 that would support a
 
 colorable claim
 
 of jurisdiction.’
 
 [Ex parte Troncalli Chrysler Plymouth Dodge, Inc.,]
 
 876 So.2d [459,] 468 [(Ala.2003) ]. Limited discovery could flesh out [Branded’s] allegations and could lead to a conclusion that the trial court can exercise personal jurisdiction over [Universal].”
 

 Ex parte Bufkin,
 
 936 So.2d at 1047. For these reasons, the trial court exceeded its discretion when it granted Universal’s motion to dismiss without first providing
 
 Branded
 
 an opportunity to conduct jurisdictional discovery.
 

 
 *419
 

 Conclusion
 

 The trial court exceeded its discretion when it granted Universal’s motion to dismiss without first providing Branded an opportunity to conduct jurisdictional discovery. Accordingly, we reverse the trial court’s judgment dismissing Branded’s claims against Universal on the basis that the court did not have personal jurisdiction over Universal, and we remand this case for the trial court to allow Branded to conduct discovery on the limited issue of personal jurisdiction.
 
 [7]
 

 REVERSED AND REMANDED.
 

 COBB, C.J., and WOODALL, STUART, BOLIN, PARKER, MURDOCK, SHAW, and MAIN, JJ., concur.
 

 [1]
 

 . This case was originally assigned to another Justice on this Court. It was reassigned to Justice Wise on January 19, 2011.
 

 [2]
 

 . In its brief to this Court, Universal asserts that subsequent discovery in the case, involving another defendant, Liddell Trailers, LLC, indicated that the customer was General Electric Company.
 

 [3]
 

 . Branded’s subsequent pleadings and the affidavit it submitted in support of those pleadings included allegations that Universal initiated contact with Branded and asked Branded to locate a company that would design and manufacture flatbed trailers to haul wind towers.
 

 [4]
 

 . The trial court also noted that Branded’s claims against Liddell were still pending and that the case would proceed as to those claims.
 

 [5]
 

 . On the date this opinion was released the Web sites referenced in paragraphs 1 and 2 of Branded’s response were still available.
 

 [6]
 

 . On the date this opinion was released, all but two of the Web sites referenced in Branded's response were still available. The Web sites that are no longer available are http:// www.alabamatrucking.org/docs/ATA_summer 3Q06_web.pdf and http://loads.goutsi.com 8080/wntv5/B KLoadSelections.
 

 [7]
 

 . Because of our disposition of this appeal on the jurisdictional discovery issue, we preter-mit discussion of the remaining claims Branded raises on appeal.