Philip KEHOE, Plaintiff,

v.

BOAT SARA T., INC. and Lantana Boat Yard, Inc., Defendants.

Civ. A. No. 85–4402–Mc.

United States District Court,
D. Massachusetts.

Feb. 17, 1987.

Michael B. Latti, Latti Associates, Boston, Mass., for plaintiff.

Clinton & Muzyka, Thomas J. Muzyka, Boston, Mass., for Boat Sara T.

H. Joseph Hameline, Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, Boston, Mass., for Lantana Boat Yard.

## MEMORANDUM AND ORDER

McNAUGHT, District Judge.

This matter comes before the Court on Lantana Boat Yard, Inc.'s motion to dismiss Counts IV and V of plaintiff's First Amended Complaint for lack of personal jurisdiction. The parties have filed supporting memoranda and submitted other papers such as affidavits, excerpts from depositions, and answers to interrogatories.

The facts as they appear from a perusal of the materials filed are as follows: This case arises out of an accident in which plaintiff Philip Kehoe was allegedly injured while working as a crew member during a trip out of Yarmouth, Nova Scotia on August 3, 1983 aboard the Boat Sara T.,

owned by Boat Sara T., Inc. The plaintiff is a resident of Massachusetts and Boat Sara T., Inc. is a Massachusetts corporation. Alan M. Whipple, a Massachusetts resident, is the president and owner of Boat Sara T., Inc. Lantana Boat Yard, Inc. ("Lantana") is a Florida corporation with a principal place of business in Lantana, Florida. Whipple's corporation purchased the boat in December 1981 or January 1982 after he inspected it in St. Augustine, Florida. He then engaged Lantana to make modifications of the boat in accordance with specifications developed by Whipple with input from Lantana personnel. Lantana had previously converted the boat from a shrimper to a swordfish long-liner around 1976. These 1982 modifications were done by Lantana in Florida. The only contact between Whipple and Lantana after 1982 was the sending of a stability report from Lantana's files around April 1985.

In support of its motion to dismiss, Lantana has submitted the affidavit of its chief financial officer David Conway. Conway's affidavit states that Lantana does not maintain and has not maintained any offices for the doing of business in Massachusetts and employs no person or agent, nor to his knowledge ever employed any, for transacting business in Massachusetts. Lantana does not and has not solicited or otherwise sought to procure business in Massachusetts, to Conway's knowledge. Although Lantana does on occasion send employees outside Florida, Conway's review of Lantana's records revealed no services performed currently by Lantana personnel in Massachusetts, nor any performed in Massachusetts at or about the time of the acts complained of in the Complaint.

Plaintiff has attached a copy of Lantana's responses to plaintiff's first set of interrogatories to his Opposition and Memorandum in Support of His Opposition (Exhibit A to Document # 53). In these answers, Conway, on behalf of Lantana, states that Lantana conducts no business and has performed no services in Massachusetts. During the five years preceding August 3, 1983, however, certain services were performed at Lantana's Lantana, Florida, facility for twelve individuals or entities who maintained either residences or mailing addresses in Massachusetts, including Alan Whipple. These services are described as repair, fuel, dockage, and store purchases and total over $500,000 for the five years. In addition Lantana spent over $200,000 during that five year period for advertising in sixteen different publications, five of which plaintiff maintains were publications of general circulation which Lantana reasonably should have expected to reach Massachusetts. Lantana's answers to interrogatories also state that Conway is aware of no occasion during that five year period that an employee, corporate officer, agent or subcontractor came to Massachusetts for anything other than personal reasons.

"The plaintiff has the burden of proving the court's jurisdiction when challenged." *Gray v. O'Brien*, 777 F.2d 864, 866 (1st Cir.1985) (per curiam). The inquiry involves two questions, which tend to converge:

> (1) is the assertion of jurisdiction authorized by statute, and (2) if authorized, is the exercise of jurisdiction under State law consistent with basic due process requirements mandated by the United States Constitution? Jurisdiction is permissible only when both questions draw affirmative responses.

*Good Hope Industries, Inc. v. Ryder Scott Co.*, 378 Mass. 1, 389 N.E.2d 76, 79 (1979).

Lantana asserts that this Court lacks personal jurisdiction over it based both on due process considerations and on the failure of the Massachusetts long arm statute, Mass. General Laws, c. 223A, § 3, to reach it. Although Lantana asserts that the plaintiff might argue that either Section 3(a) or (d) of Chapter 223A might apply to this case, the plaintiff has premised his argument solely on Section 3(a). I must therefore assume he has waived any claim of jurisdiction under Section 3(d). At any rate, Section (d) applies to persons causing tortious injury in Massachusetts by an act

or omission outside Massachusetts. Lantana argues, and plaintiff does not refute, that the injury did not occur in Massachusetts so this section does not apply.

Section 3(a) of the Massachusetts General Laws, Chapter 223A, provides that:

A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's (a) transacting any business in this commonwealth . . .

Section 3(a) "gives rise to jurisdiction if the defendant . . . transacted any business in the Commonwealth, and if the alleged cause of action arose from such transaction of business." *Good Hope, supra,* 389 N.E.2d at 80. Obviously, if Lantana's activities in modifying the Boat Sara T. constitute "transacting any business" within the meaning of the statute, then plaintiff's injuries, which are alleged to have been caused by defective or negligently performed modifications "arose from such transaction of business." "The language 'transacting any business' is to be construed broadly. . . ." *Bond Leather Co. v. Q.T. Shoe Mfg. Co.,* 764 F.2d 928, 931 (1st Cir.1985) (citing *Hahn v. Vermont Law School,* 698 F.2d 48, 50 (1st Cir.1983); *Nova Biomedical Corp. v. Moller,* 629 F.2d 190, 193–94 (1st Cir.1980)). The Massachusetts Supreme Judicial Court in *Good Hope* suggested that, even in the cases of *"Automatic" Sprinkler Corp. of America v. Seneca Foods Corp.,* 361 Mass. 441, 280 N.E.2d 423 (1972), and *Droukas v. Divers Training Academy, Inc.,* 375 Mass. 149, 376 N.E.2d 548 (1978), "while the defendants might be viewed literally as having 'transact[ed] . . . business' in Massachusetts, their contacts with the Commonwealth were *constitutionally insufficient* to support jurisdiction under G.L. c. 223A, § 3(a)." 389 N.E.2d at 81 n. 13 (emphasis added). In *Droukas,* on which Lantana heavily relies, the defendant's only contacts with Massachusetts were the placement of an advertisement in a publication distributed in Massachusetts, a telephone call from the plaintiff in Massachusetts to the defendant in Florida regarding the purchase

of the engines, the sending of correspondence to the plaintiff confirming the sale, and the shipment of the engines "collect" to the plaintiff in Massachusetts. *Droukas,* 376 N.E.2d at 551. In *"Automatic" Sprinkler,* the defendant's contacts in Massachusetts consisted of defendant's agent signing a purchase order and mailing it to Worcester, Massachusetts, the receipt by defendant of plaintiff's invoice and a letter acknowledging and accepting the order, and defendant's payment by mail to Worcester in response to invoices. *See* 280 N.E.2d at 425.

In the present case, Lantana during the five years prior to this accident engaged in advertising that could have been expected to reach Massachusetts and did a substantial amount of work for persons with Massachusetts residences or mailing addresses. These activities certainly represent greater transaction of business than those involved in *"Automatic" Sprinkler* or *Droukas.* Even considering the business transacted with Whipple alone, the substantial amount of money ($39,855.78 for repairs and store purchases) involved in the repairs of a boat known to belong to a Massachusetts-based person or corporation indicates a significant business transaction with Massachusetts. The business transacted in this case is greater than that found sufficient to constitute transacting business under the long arm statute in *Hahn v. Vermont Law School,* 698 F.2d 48, 51 (1st Cir.1983) (defendant mailing application information and an acceptance letter to plaintiff in Massachusetts) or *Nova Biomedical Corp. v. Moller,* 629 F.2d 190, 197 (1st Cir.1980) (sending threatening infringement letters into the forum under the circumstances of that case constituted a transaction of business under Section 3(a)).

As far as the constitutional inquiry is concerned, Lantana has "purposefully established 'minimum contacts' in the forum State," *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985) (citing *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945)). In

the five years before the accident, Lantana advertised in publications that apparently could have been expected to reach Massachusetts and did work for a number of persons based in Massachusetts, even though the work was done in Florida. "So long as a commercial actor's efforts are 'purposefully directed' toward residents of another State, we have consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there. *Keeton v. Hustler Magazine, Inc.,* [465 U.S. 770, 774–775, 104 S.Ct. 1473, 1478–1479, 79 L.Ed.2d 790 (1984)]." *Burger King, supra,* 471 U.S. at 476, 105 S.Ct. at 2184 (additional citations omitted). In this case, Lantana knew that the boats on which it worked belonged to persons with residences or mailing addresses in Massachusetts, so presumably it expected the boats to be used here. "'[T]he forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State' and those products subsequently injure forum consumers." *Burger King, supra,* at 473, 105 S.Ct. at 2182 (quoting *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297–98, 100 S.Ct. 559, 567–68, 62 L.Ed.2d 490 (1980)). "'[T]he foreseeability that is critical to due process analysis … is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there.'" *Id.,* 471 U.S. at 474, 105 S.Ct. at 2183 (quoting *World-Wide Volkswagen,* 444 U.S. at 297, 100 S.Ct. at 567).

Doing a substantial amount of work on Massachusetts-based boats, and in particular Whipple's boat, Lantana should "reasonably anticipate being haled into court" here. Personal jurisdiction over Lantana is therefore appropriate in this case. In addition, exercising jurisdiction over Lantana will serve the interests of judicial economy because one federal court will be able to hear the entire case and to evaluate the liability, if any, of both defendants rather than only one.

Lantana's motion to dismiss for lack of personal jurisdiction is denied.