PARKER, Justice.
Claudia Dabbieri filed a complaint in the Perry Circuit Court naming as defendants Donald Wease, Alabama Cable and Fiber Repair (“Alabama Cable”),[1] PDQ CATV, Inc. (“PDQ”), City Boy’s Tire and Brake, Inc. (“CBT”), Continental Tire the Americas, LLC, and several fictitiously named defendants, asserting claims arising out of a motor-vehicle accident in Perry County. CBT moved the trial court, pursuant to Rule 12(b)(2), Ala. R. Civ. P., to dismiss Dabbieri’s claims against it for lack of personal jurisdiction; that motion was denied, and CBT petitioned this Court for a writ of mandamus, directing the trial court to grant CBT’s motion to dismiss. We grant the petition and issue the writ.

Facts and Procedural History

On March 19, 2008, Dabbieri, who resides in Perry County, went to the shop operated by CBT, which is located in High Springs, Florida. Dabbieri was driving a 2001 Chevy van that she apparently co-owned with her employer, Wease.[2] Dabbi-eri states in her complaint that, after purchasing the van in November 2007, Wease and Alabama Cable (a business owned by Wease and Dabbieri’s employer) had all four tires on the van replaced.
When Dabbieri brought the van into CBT’s shop on March 19, 2008, CBT’s employees determined that one of the tires was leaking ah’. Dabbieri purchased a new tire from CBT and had employees of CBT install that tire on the van; the new tire was identical to the tire it replaced. The total cost, including mounting and balancing the new tire as well as disposing of the old tire, was $151.83, which Dabbieri paid in cash. On the receipt/statement of work, below the itemization of work done by CBT on the van, was the following language:
“Declined alignment
Lifetime balance, rotation, & flat repairs with new tire purchase.
Tire bal. & rotate rec every 6,000 miles road hazard covers all non repairable tire punctures. Tires will be prorated by tread depth down to 2/32nd mark.
Customer is responsible instillation [sic].”
Neither Dabbieri nor any employee of CBT signed the receipt/statement of work.
On April 15, 2008, Dabbieri was driving the van in Perry County when one of the three original replacement tires on the van, i.e., not the tire installed by CBT on March 19, 2008, failed, causing the van to leave the road and roll; Dabbieri sustained severe injuries. Later investigation indicated that the tire failure was probably caused by tread separation and that the tread separation might have been caused, at least in part, by the improper sizing of the tires on the van.
On April 14, 2010, Dabbieri filed her complaint. Dabbieri claimed that, as part of the installation of the new tire, CBT had a duty to inspect the van and to warn her of any dangers the inspection might reveal, including, she said, the fact that the tires that were on the van were the wrong size. *524 Dabbieri claimed that CBT breached that duty to inspect; that, as a result of CBT’s breach of that duty, she did not know the tires on the van were the wrong size; and that, because she lacked that knowledge, she continued driving the van with the wrong size tires, which, she claims, caused the accident in which she was injured.
For all that appears, neither Wease nor Alabama Cable responded to the complaint or appeared in the case. Continental Tire the Americas, LLC (allegedly the manufacturer of the failed tire), also apparently failed to respond to the complaint.
CBT filed a motion to dismiss, arguing that the trial court lacked personal jurisdiction over it.[3] CBT attached to its motion to dismiss an affidavit from Justin Ellison, the sole shareholder of CBT, in which he testified:
“1. My name is Justin Ellison. I am the sole shareholder of City Boy’s Tire and Brake, Inc. (hereinafter referred to as ‘[CBT]’), who is one of the named defendants in the above styled cause.
“2. [CBT] is a Florida corporation and, as stated, I am the sole shareholder and owner of that corporation. [CBT] is in the business of automobile and truck maintenance.
“3. I am a resident of the State of Florida and have been a continuous resident of Florida for over 30 years. I have never owned property in Alabama and have never conducted business there.
“4. [CBT] is located in High Springs, Florida. It began business in 1991, and has continuously been in business since that date.
“5. [CBT] has never had any place of business other than High Springs, Florida.
“6. The vast majority of the business done by [CBT] is servicing vehicles of local residents in Alachua County, Florida and some of its adjoining counties.
“7. At times, [CBT] will service vehicles which are traveling through Florida and may be in need of service. However, any such service would be an isolated incident.
“8. [CBT] only advertises in Alachua County, Florida and surrounding Florida counties. It does so by advertising in local newspapers and may send postcards locally in Alachua County, Florida and surrounding counties.
“9. [CBT] has never done business in the State of Alabama.
“10. [CBT] has never advertised in the State of Alabama or solicited business in Alabama.
“11. [CBT] is not licensed to do business in Alabama and has never paid taxes in the State of Alabama.
“12. [CBT] has never had an office or business location in the State of Alabama, and has never employed anyone who was a resident of the State of Alabama.
“13. [CBT] has never done any business by agent in the State of Alabama.
“14. [CBT] has never owned any real or personal property located in the State of Alabama.
“15. [CBT] has never purposely availed itself of the privilege of conducting activities in Alabama.
*525 “16. The selling of a tire by [CBT] at the place of business in March of 2008 to the Plaintiff, Claudia Dabbieri, was a single isolated incident.
“17. To the best of my knowledge [CBT] has never done any business with the plaintiff, other than on the one incident when she purchased a tire from [CBT],
“18. [CBT] does not solicit business or otherwise engage in any other persistent course of conduct or business in the State of Alabama. Accordingly, [CBT] does not derive substantial revenue from goods and services used or consumed in the State of Alabama nor from services rendered in the State of Alabama.
“19. All contact the plaintiff had with [CBT] was initiated by her. [CBT] never solicited her business.
“20. Although [CBT] is a corporation, it is essentially a sole proprietorship as the undersigned affiant is the only manager of the company.
“21. [CBT] has only one store located in High Springs, Florida, which is approximately 400 miles from Perry County, Alabama.
“22. To have to defend itself in Perry County, Alabama, would be a substantial hardship upon [CBT].”
Dabbieri responded to the motion to dismiss; attached to her response were a single page from an apparently three-page printout, dated June 25, 2010, from a Web site allegedly operated by CBT and the receipt/statement of work dated March 19, 2008, for the tire replacement performed by CBT. Shortly thereafter, Dabbieri supplemented her response, attaching a debit-card receipt and a statement of work from City Boy’s Tire & Brake of Alachua, Inc., located in Alachua, Florida, both dated June 14, 2008, which indicated that work had been done for “Alabama Cable”; a receipt/statement of work from CBT dated October 11, 2008, evidencing work done for an unidentified “cash customer”; and an affidavit from “Donald Wease d/b/a Alabama Cable and Fiber Repair.” Wease’s affidavit read, in relevant part:
“1. My name is Donald Wease. I am a citizen of the state of Alabama. I am over the age of 19 and am personally familiar with the facts stated herein.
“2. I am the President of Alabama Cable and Fiber Repair. Alabama Cable and Fiber Repair is an Alabama company with its place of business located in Perry County, Alabama.
[[Image here]]
“9. Over the course of the last 15 years I have also had over twenty business dealings with City Boys [sic] Tire and Brake, Inc., in buying tires and servicing vehicles. The service conducted was for vehicles used in the state of Alabama.
“10. During that time I have had telephone conversations with representatives of City Boys Tire and Brake, Inc., regarding work on those vehicles. I was in Alabama when those telephone conversations were conducted.
“11. City Boys Tire and Brake, Inc., has provided warranties for the goods and services provided that create an obligation by them to me and my business in Alabama.
“12. On June 14, 2008, City Boys Tire and Brake, Inc., conducted a transaction with me. A true and accurate copy of the receipt for that sale is attached hereto as Exhibit 3.
“13. On October 11, 2008, City Boys Tire and Brake, Inc., conducted another transaction with me. A true and accurate copy of the receipt for that sale is attached hereto as Exhibit 4.”
*526 CBT, in turn, submitted a supplementary affidavit from Justin Ellison, in which he testified:
“1. My name is Justin Ellison. I previously submitted an Affidavit in this case dated May 12, 2010, which was attached as Exhibit ‘A’ to the Motion to Dismiss or in the Alternative Motion to Quash Service heretofore filed by City Boy’s Tire and Brake, Inc. (hereinafter ‘[CBT]’). The undersigned Affiant re-certifies the statements made in the aforesaid Affidavit of May 12, 2010.
“2. The undersigned is informed that an affidavit was made by Donald Wease making certain allegations with reference to Mr. Wease’s contacts with [CBT]. Affiant is further informed that attached to the affidavit are two invoices, one addressed to Alabama Cable, 307 West Green Street, Marion, Alabama dated June 14, 2008. This invoice is from City Boy’s Tire and Brake of Alachua, Inc. (hereinafter referred to as ‘City Boy’s of Alachua’). That company is a separate company from [CBT]. Neither the undersigned Affiant[ ] nor [CBT] own any stock in or have any connection with City Boy’s of Alachua. At one time (prior to the accident made the basis of the complaint) the undersigned Affiant did own City Boy’s of Alachua; however, that business was sold to separate parties in 2007 and neither the Affiant nor [CBT] has had any ownership interest in that company since it was sold.
“3. [CBT] only does business out of its sole place of business in High Springs, Florida. It does not service vehicles anywhere except at its place of business in High Springs.
“4. The Invoice No. 162399 attached as Exhibit 4 to the affidavit of Donald Wease involved only a dismounting and mounting of a tire and replacing valve stems. The work done on that date for that invoice was done solely at the High Springs, Florida place of business of [CBT]. Whoever requested the work as described on said invoice would have initiated the contact with [CBT] at its place of business in High Springs, Florida.
“5. Although [CBT] has no record of doing business with Donald Wease or Alabama Cable in its records, it does not deny that it may have done tire work as shown on Exhibit 4 attached to the affidavit of Mr. Wease. However, as above stated, such work would have been done at its place of business in High Springs, Florida.
“6. Neither the undersigned Affiant, nor anyone at [CBT] has any recollection of any telephone conversations they may have had with Donald Wease. Neither the undersigned Affiant nor any agent or employee of [CBT] has ever conducted business in Alabama.
“7. The transaction between the plaintiff, Claudia Dabbieri, and [CBT] made the basis of the complaint involved the replacement of one tire at a costs [sic] of $151.83, which was paid in cash. The only guarantees or warranties [CBT] gave when it replaced the tire for the plaintiff is that it would rotate and balance the tires at its shop in High Springs, Florida every 6,000 miles, and that it would replace a non-reparable tire puncture with a new tire on a prorated basis, based upon tread wear. Any such rotating or replacement would be done at its shop in High Springs.
“8. Claudia Dabbieri never availed herself of the guarantees or warranties made by [CBT] listed in paragraph 7 above with reference to balancing the tire she was sold or replacing it due to a non-repairable tire puncture.
*527 “9. [CBT] does not solicit business in Alabama either through sales persons or through advertising reasonably calculated to reach Alabama.
“10. The website of [CBT] only posts or sends information about the services, products and other information of [CBT].”
The trial court denied CBT’s motion to dismiss. CBT then petitioned this Court for a writ of mandamus.

Standard of Review

“““The writ of mandamus is a drastic and extraordinary writ, to be “issued only when there is: 1) a clear legal right in the petitioner to the order sought; 2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; 3) the lack of another adequate remedy; and 4) properly invoked jurisdiction of the court.” Ex parte United Serv. Stations, Inc., 628 So.2d 501, 503 (Ala.1993); see also Ex parte Ziglar, 669 So.2d 133, 134 (Ala.1995).’ Ex parte Carter, [807 So.2d 534,] 536 [(Ala.2001) ].”
“ ‘Ex parte McWilliams, 812 So.2d 318, 321 (Ala.2001). “An appellate court considers de novo a trial court’s judgment on a party’s motion to dismiss for lack of personal jurisdiction.” Elliott v. Van Kleef 830 So.2d 726, 729 (Ala.2002).
“ ““ “In considering a Rule 12(b)(2), Ala. R. Civ. P., motion to dismiss for want of personal jurisdiction, a court must consider as true the allegations of the plaintiffs complaint not controverted by the defendant’s affidavits, Robinson v. Giamarco & Bill, P.C., 74 F.3d 253 (11th Cir.1996), and Cable/Home Communication Corp. v. Network Productions, Inc., 902 F.2d 829 (11th Cir.1990), and ‘where the plaintiffs complaint and the defendant’s affidavits conflict, the ... court must construe all reasonable inferences in favor of the plaintiff.’ Robinson, 74 F.3d at 255 (quoting Madara v. Hall, 916 F.2d 1510, 1514 (11th Cir.1990)).” ’
“ ‘ “Wenger Tree Serv. v. Royal Truck & Equip., Inc., 853 So.2d 888, 894 (Ala.2002) (quoting Ex parte Mclnnis, 820 So.2d 795, 798 (Ala.2001)). However, if the defendant makes a prima facie evidentiary showing that the Court has no personal jurisdiction, ‘the plaintiff is then required to substantiate the jurisdictional allegations in the complaint by affidavits or other competent proof, and he may not merely reiterate the factual allegations in the complaint.’ Mercantile Capital, LP v. Federal Transtel, Inc., 193 F.Supp.2d 1243, 1247 (N.D.Ala.2002) (citing Future Tech. Today, Inc. v. OSF Healthcare Sys., 218 F.3d 1247, 1249 (11th Cir.2000)). See also Hansen v. Neumueller GmbH, 163 F.R.D. 471, 474-75 (D.Del.1995) (‘When a defendant files a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(2), and supports that motion with affidavits, plaintiff is required to controvert those affidavits with his own affidavits or other competent evidence in order to survive the motion.’) (citing Time Share Vacation Club v. Atlantic Resorts, Ltd., 735 F.2d 61, 63 (3d Cir.1984)).”
“ ‘Ex parte Covington Pike Dodge, Inc., 904 So.2d 226, 229-30 (Ala.2004).’ ”
Ex parte Duck Boo Int’l Co., 985 So.2d 900, 905-06 (Ala.2007) (quoting Ex parte Bufkin, 936 So.2d 1042, 1044-45 (Ala. 2006)).

Discussion

Alabama courts may exercise personal jurisdiction over an out-of-state *528 defendant only as permitted by Rule 4.2(b), Ala. R. Civ. P.:
“Rule 4.2(b), Ala. R. Civ. P., Alabama’s ‘long-arm’ provision, governs whether an Alabama court may exercise personal jurisdiction over an out-of-state defendant. In pertinent part, that rule states:
‘“(b) Basis for Out-of-State Service. An appropriate basis exists for service of process outside of this state upon a person or entity in any action in this state when the person or entity has such contacts with this state that the prosecution of the action against the person or entity in this state is not inconsistent with the constitution of this state or the Constitution of the United States.... ’
“This rule extends the personal jurisdiction of Alabama courts to the limit of due process under the United States and Alabama Constitutions. When applying Rule 4.2(b), this Court has interpreted the due process guaranteed under the Alabama Constitution as coextensive with that guaranteed under the United States Constitution.”
Hiller Invs., Inc. v. Insultech Group, Inc., 957 So.2d 1111, 1114-15 (Ala.2006). Thus, when applying Rule 4.2, Ala. R. Civ. P., we look not to statutes or rules, but to the essence of due process. As this Court stated in Dillon Equities v. Palmer & Cay, Inc., 501 So.2d 459, 461 (Ala.1986), instead of simply applying formulas, we rely on principles of fairness and justice:
“ ‘ “[D]ue process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend ‘traditional notions of fair play and substantial justice.’ ” ’ McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957), quoting International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). Alabama’s long-arm statute (Rule 4.2, Ala. R. Civ. P.) has been interpreted by this Court to extend the jurisdiction of Alabama courts to the permissible limits of due process. DeSotacho, Inc. v. Valnit Industries, Inc., 350 So.2d 447 (Ala.1977), Duke v. Young, 496 So.2d 37 (Ala.1986).
“Alabama’s long-arm procedure for service of process is not limited to ‘rigid transactional categories’ or subject to a mechanical formula. Alabama Waterproofing Co. v. Hanby, 431 So.2d 141 (Ala.1983). Instead, the relevant facts and attendant circumstances must be examined and the relationship among the defendant, the forum, and the litigation analyzed to determine if the defendant has sufficient ‘minimum contacts’ so that ‘the maintenance of the suit does not offend “traditional notions of fair play and substantial justice.” ’ International Shoe Co. v. Washington.”
Personal jurisdiction is analyzed under theories of specific jurisdiction and general jurisdiction. As this Court explained in Ex parte Citizens Property Insurance Corp., 15 So.3d 511, 516 (Ala.2009):
“Personal jurisdiction can rest either on the theory of specific jurisdiction, when ‘a State exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant’s contacts with the forum,’ Helicópteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 n. 8, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984), or on the theory of general jurisdiction, ‘when the cause of action does not arise out of or relate to the foreign corporation’s activities in the forum State, [but] ... there are sufficient [continuous and systematic] con *529 tacts between the State and the foreign corporation.’ Id. at 414-16, 104 S.Ct. 1868; see also Ex parte Covington Pike Dodge, Inc., [904 So.2d 226 (Ala.2004) ]. This Court has stated, however, that regardless of whether the issue of jurisdiction is considered under specific-jurisdiction analysis or under general-jurisdiction analysis, ‘[t]he critical question with regard to the nonresident defendant’s contacts [with the forum state] is whether the contacts are such that the nonresident defendant “ ‘should reasonably anticipate being haled into court’ ” in the forum state.’ Elliott [v. Van Kleef], 830 So.2d [726,] at 730 [(Ala. 2002) ] (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 473, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985), quoting in turn World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 295, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980) (emphasis added)).”
Dabbieri acknowledges that the trial court lacked general jurisdiction over CBT in this case;[4] thus, the issue before us is whether the trial court had personal jurisdiction over CBT under a specific-contacts analysis.
“As a general rule, the exercise of judicial power is not lawful unless the defendant ‘purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.’ ” J. McIntyre Mach., Ltd. v. Nicastro, — U.S. -, -, 131 S.Ct. 2780, 2785, 180 L.Ed.2d 765 (2011) (quoting Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958)). In Burger King Corp. v. Rudzewicz, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985), the United States Supreme Court explained that the exercise of specific jurisdiction over an out-of-state defendant required a showing of purposeful action by the defendant of directing its activity toward residents of the forum state:
“Where a forum seeks to assert specific jurisdiction over an out-of-state defendant who has not consented to suit there, this ‘fair warning’ requirement is satisfied if the defendant has ‘purposefully directed’ his activities at residents of the forum, Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 774 (1984), and the litigation results from alleged injuries that ‘arise out of or relate to’ those activities, Helicópteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 (1984). Thus ‘[t]he forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State’ and those products subsequently injure forum consumers. World-Wide Volkswagen Corp. v. Woodson, supra, 444 U.S. [286], at 297-298 [ (1980) ].... And with respect to interstate contractual obligations, we have emphasized that parties who ‘reach out beyond one state and create continuing relationships and obligations with citizens of another state’ are subject to regulation and sanctions in the other State for the consequences of their activities. Travelers Health Assn. v. Virginia, 339 U.S. 643, 647 (1950). See also McGee v. International Life Insurance Co., 355 U.S. 220, 222-223 (1957).”
471 U.S. at 472-73. The Supreme Court went on to explain that to be purposeful, *530 the out-of-state defendant’s contacts with the forum state must be deliberate and substantial, rather than accidental or random:
“This ‘purposeful availment’ requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of ‘random,’ ‘fortuitous,’ or ‘attenuated’ contacts, Keeton v. Hustler Magazine, Inc., 465 U.S., at 774; WorldWide Volkswagen Corp. v. Woodson, supra, 444 U.S., at 299, or of the ‘unilateral activity of another party or a third person,’ Helicópteros Nacionales de Colombia, S.A. v. Hall, supra, 466 U.S., at 417. Jurisdiction is proper, however, where the contacts proximately result from actions by the defendant himself that create a ‘substantial connection’ with the forum State. McGee v. International Life Insurance Co., supra, 355 U.S., at 223; see also Kulko v. California Superior Court, supra, 436 U.S. [84], at 94, n. 7 [ (1978) ]. Thus where the defendant ‘deliberately’ has engaged in significant activities within a State, Keeton v. Hustler Magazine, Inc., supra, 465 U.S., at 781, or has created ‘continuing obligations’ between himself and residents of the forum, Travelers Health Assn. v. Virginia, 339 U.S., at 648, he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by ‘the benefits and protections’ of the forum’s laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well.”
471 U.S. at 475-76 (footnote omitted).
On appeal, CBT cites Ex parte Troncalli Chrysler Plymouth Dodge, Inc., 876 So.2d 459 (Ala.2003), in support of its argument that the trial court’s denial of its motion to dismiss was improper. In Troncalli, David Case, a resident of Alabama, purchased an automobile from Troncalli Chrysler Plymouth Dodge, Inc., a Georgia automobile dealership. Case later sued Troncalli, alleging bad faith, misrepresentation, deceit, breach of contract, and other claims. Discussing the trial court’s lack of personal jurisdiction over the defendant in that case, this Court stated:
“Case concedes, as he must, that Troncalli’s jurisdictional objection ‘might be correct if [Case] simply drove to [Troncalli’s] Georgia location to purchase the vehicle without being induced to do so.’ ... This is so, he argues, because personal jurisdiction, which purports to be based solely on an isolated sale by an out-of-state defendant to the in-state plaintiff, is generally unsustainable. See Network Professionals, Inc. v. Network Int’l, Ltd., 146 F.R.D. 179, 181 n. 1 (D.Minn.1993) (‘The due process analysis focuses on a defendant’s contacts with the forum, not its contacts with the plaintiff; thus, an isolated sale will not support jurisdiction, even if the cause of action arises from the sale.’); see also Wines v. Lake Havasu Boat Mfg., Inc., 846 F.2d 40 (8th Cir.1988); Chung v. NANA Dev. Corp. 783 F.2d 1124, 1126 (4th Cir.1986) (a sale comprising no more than an ‘ “isolated” or “attenuated” single transaction ... has always been deemed inadequate to satisfy due process’); Charia v. Cigarette Racing Team, Inc., 583 F.2d 184, 189 (5th Cir.1978) (‘four sporadic and isolated sales’ did not support personal jurisdiction); Butler v. Beer Across Ameñca, 83 F.Supp.2d 1261 (N.D.Ala.2000); accord Stuart v. Spademan, 772 F.2d 1185 (5th Cir.1985); Benjamin v. Western Boat Building Corp., 472 F.2d 723 (5th Cir.1973); Douglas v. Modern Aero, Inc., 954 F.Supp. 1206 (N.D.Ohio 1997); Highway Auto Sales, Inc. v. Auto-Ko *531 nig of Scottsdale, Inc., 943 F.Supp. 825 (N.D.Ohio 1996).
“Of particular relevance is whether the plaintiff initiated the sale or contact. See Madison Consulting Group v. South Carolina, 752 F.2d 1193 (7th Cir. 1985); CBP Res., Inc. v. Ingredient Res. Corp., 954 F.Supp. 1106 (M.D.N.C.1996); Regent Lighting Corp. v. American Lighting Concept, Lie., 25 F.Supp.2d 705 (M.D.N.C.1997) (‘the contacts to be considered for purposes of personal jurisdiction are those actually generated by Defendants, not those created by the unilateral acts of Plaintiff); Wells American Corp. v. Sunshine Electronics, 717 F.Supp. 1121, 1123 (D.S.C.1989); American Stair Corp. v. Renata Constr. Co., 625 F.Supp. 136 (N.D.Ill.1985).
“Thus, something more than an isolated contact initiated by an in-state plaintiff is required to satisfy the ‘purposeful-availment’ prong of the due-process analysis. ‘Something more’ might involve ‘prior negotiations and contemplated future consequences, along with ... the parties’ actual course of dealing.’ Burger King Corp. v. Rudzewicz, 471 U.S. 462, 463 (1985) (emphasis added). ‘Something more’ might be found ‘where the defendant “deliberately” has engaged in significant activities within [Alabama] ... or has created “continuing .obligations ” between himself and residents of [Alabama].’ 471 U.S. at 475-76 (emphasis added).”
876 So.2d at 464-65.
Dabbieri points to this Court’s quotation in Troncalli (quoting Burger King) that the creation of “‘continuing obligations’” between the out-of-state defendant and the Alabama plaintiff might make an otherwise “isolated contact” sufficient to satisfy the “ ‘purposeful availment’ prong of the due-process analysis.” 876 So.2d at 465. She argues in her brief that “City Boy’s warranties created continuing obligations to an Alabama resident.” Dabbieri’s brief, at 16. Dabbieri argues, based on Wease’s affidavit, that CBT had an ongoing business relationship with Wease and Dabbieri and therefore knew, when Dabbieri purchased the tire on March 19, 2008, that Dabbieri was an Alabama citizen. Dabbieri further argues that the purchase of the new tire, with the accompanying promise by CBT to rotate and balance the tire or to replace it if it failed, created a continuing obligation on CBT’s part within this State, thus making it foreseeable that CBT would be haled into court in Alabama. But the limited obligation in this case — CBT’s promise to rotate and, if necessary, to repair or replace the tire at its place of business in High Springs, Florida — involves no obligation in Alabama.
Dabbieri also directs our attention to Ex parte Pope Chevrolet, Inc., 555 So.2d 109, 114 (Ala.1989), in which this Court held that the defendant, “a large-volume [automobile] dealership,” had purposefully availed itself of the protection of Alabama laws when it advertised through regional publications, “soliciting sales from beyond the borders of Georgia.” However, Dabbi-eri provides no explanation of how Pope applies in this case, and the evidence before this Court does not indicate that CBT was “a large-volume” tire store that advertised across a multistate region.
Similarly, Dabbieri cites Lowry v. Owens, 621 So.2d 1262 (Ala.1993), a case factually similar to and relying on Pope, but again without an explanation as to its applicability. Like Pope, the decision in Lowry turned on the fact that the defendant’s advertising targeted Alabama residents. As noted, CBT does not advertise in Alabama. In discussing Pope and Low-ry, the Troncalli Court noted that those cases “involved much more than isolated *532 contacts initiated by in-state plaintiffs.” 876 So.2d at 467.
Dabbieri also cites Boyd v. U-Haul International, Inc., 527 So.2d 713 (Ala.1988), in which this Court upheld the exercise of personal jurisdiction over an international corporation that was actively involved in the management and operations of its Alabama subsidiary. Like Pope and Lowry, however, this case is inapplicable. CBT does not have an Alabama subsidiary, nor does it do any business in Alabama.
Dabbieri also argues that the reference in Troncalli to “something more than an isolated contact,” 876 So.2d at 465, is a misapplication of Asahi Metal Industry Co. v. Superior Court of California, 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987), authored by Justice O’Connor, and she “urges the Court to take this opportunity to explain that [Ex parte DBI, Inc., 23 So.3d 635 (Ala.2009),] also had the effect of overruling the ‘something more’ test that was announced for the first time in Troncalli.” Dabbieri’s brief, at 20-21. Dabbieri argues that the Troncalli Court’s reference to “something more” is the equivalent of “stream-of-commeree-plus” (a common shorthand this Court and others have used to describe the theory advanced by Justice O’Connor’s opinion in Asahi) and that rejecting the “stream-of-eommeree-plus” argument would therefore require us to reach a different outcome than the outcome dictated by this Court’s decision in Troncalli.
Ultimately, however, the distinction between “stream-of-commerce” and “stream-of-commerce-plus” is irrelevant to this case. The cases cited by Dabbieri — Asahi DBI, Ex parte Alloy Wheels International, Ltd., 882 So.2d 819 (Ala.2003), Brown v. ABUS Kransysteme GmbH, 11 So.3d 788 (Ala.2008), and Ex parte Mclnnis, 820 So.2d 795 (Ala.2001) — each involved a product, placed into the stream of commerce, that allegedly caused harm in the place to which the stream took it. That did not happen here. The tire CBT sold to Dabbieri was not defective, and it did not cause harm to her or anyone else. Dabbieri’s cause of action against CBT does not involve a product that entered Alabama through the stream of commerce; rather, this case involves an alleged negligent inspection and consequent failure to warn. Both the alleged negligent inspection and failure to warn occurred, if at all, in Florida. The debate between “stream-of-commerce” and “stream-of-commerce-plus” is, therefore, despite Dabbieri’s extended argument in her brief, simply inapplicable. As the United States Court of Appeals for the Fourth Circuit said in Federal Insurance Co. v. Lake Shore Inc., 886 F.2d 654, 659-60 (4th Cir.1989):
“[A] ‘stream of commerce’ theory of personal jurisdiction has no applicability here. Factors that might make such a theory applicable, such as marketing and advertising a product for the forum state, are absent. Asahi, 480 U.S. at 112 (O’Connor, J.). The case also appears to be one in which ‘a consumer fortuitously transports a defendant’s product’ into a forum rather than one involving a forum where ‘the defendant’s product was regularly sold.’ Id. at 119 (Brennan, J., concurring in part and concurring in the judgment). Finally, the case is not one involving a ‘regular course of dealing that results in deliveries’ of multiple units into a forum ‘annually over a period of several years.’ Id. at 122 (Stevens, J., concurring in part and concurring in the judgment). Whether personal jurisdiction would attach in these latter circumstances under a ‘stream of commerce’ theory is simply not before us.”
Dabbieri also cites Kehoe v. Boat Sara T, Inc., 653 F.Supp. 853 (D.Mass.1987), *533 and Sierra v. A Betterway Rent-A-Car, Inc., 863 So.2d 358 (Fla.Dist.Ct.App.2003), to show that language from stream-of-commerce cases has been applied to service-related, as opposed to product-related, litigation. Kehoe and Sierra, however, involved personal jurisdiction under a general-contacts analysis and not, as here, under a specific-contacts analysis.
In Ex parte Citizens Property Insurance Corp., supra, this Court stated that “[t]he issue of personal jurisdiction “‘stands or falls on the unique facts of [each] case.” ’ ” 15 So.3d at 515 (quoting Ex parte I.M.C., Inc., 485 So.2d 724, 725 (Ala.1986)). CBT argues that the facts in this case demonstrate that the transaction here was nothing “more than an isolated contact initiated by an in-state plaintiff.” Troncalli, 876 So.2d at 465. As Ellison stated in his affidavit, CBT does no business in Alabama. It has no office or agent here and owns no property in this State. CBT does not advertise in Alabama and makes no effort to obtain the business of Alabama citizens. Like the transaction in Troncalli, CBT’s sale of the tire to Dabbieri was an “ ‘ “isolated” ... single transaction,’ ” 876 So.2d at 464, a contact “ ‘ “created by the unilateral acts of the Plaintiff.” ’ ” 876 So.2d at 465 (quoting other cases). Dabbieri, however, argues that, because she gave CBT her Alabama address and because CBT saw that the van was licensed in Alabama, CBT should have foreseen that any faulty work on its part might lead to litigation in Alabama. But, as the United States Supreme Court said in World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 295-97, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980), “foreseeability” alone does not justify the exercise of personal jurisdiction:
“Applying these principles to the case at hand, we find in the record before us a total absence of those affiliating circumstances that are a necessary predicate to any exercise of state-court jurisdiction. Petitioners carry on no activity whatsoever in Oklahoma. They close no sales and perform no services there. They avail themselves of none of the privileges and benefits of Oklahoma law. They solicit no business there either through salespersons or through advertising reasonably calculated to reach the State. Nor does the record show that they regularly sell cars at wholesale or retail to Oklahoma customers or residents or that they indirectly, through others, serve or seek to serve the Oklahoma market. In short, respondents seek to base jurisdiction on one, isolated occurrence and whatever inferences can be drawn therefrom
“It is argued, however, that because an automobile is mobile by its very design and purpose it was ‘foreseeable’ that the Robinsons’ Audi would cause injury in Oklahoma. Yet ‘foreseeability’ alone has never been a sufficient benchmark for personal jurisdiction under the Due Process Clause....
“If foreseeability were the criterion, a local California tire retailer could be forced to defend in Pennsylvania when a blowout occurs there, see Erlanger Mills, Inc. v. Cohoes Fibre Mills, Inc., 239 F.2d 502, 507 (4th Cir.1956); a Wisconsin seller of a defective automobile jack could be haled before a distant court for damage caused in New Jersey, Reilly v. Phil Tolkan Pontiac, Inc., 372 F.Supp. 1205 (N.J.1974); or a Florida soft-drink concessionaire could be summoned to Alaska to account for injuries happening there, see Uppgren v. Executive Aviation Services, Inc., 304 F.Supp. 165, 170-171 (Minn.1969). Every seller of chattels would in effect appoint the chattel his agent for service of process. His amenability to suit would travel with the chattel....
“This is not to say, of course, that foreseeability is wholly irrelevant. But *534 the foreseeability that is critical to due process analysis is not the mere likelihood that a product will find its way into the forum State. Rather, it is that the defendant’s conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there. See Kulko v. California Superior Court, supra, 436 U.S. [84], at 97-98 [ (1978) ]; Shaffer v. Heitner, 433 U.S. [186], at 216 [ (1977) ], and see id., at 217-219 (Stevens, J., concurring in judgment). The Due Process Clause, by ensuring the ‘orderly administration of the laws,’ International Shoe Co. v. Washington, 326 U.S., at 319, gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit.”
(Footnote omitted.)
Applying these principles to Dabbieri’s tire purchase from CBT, we conclude that that transaction was an “isolated occurrence” that was not sufficient to cause CBT to “reasonably anticipate being haled into court” in Alabama. As this Court recently said in Ex parte No. 1 Steel Products, Inc., 76 So.3d 805, 812 (Ala.2011): “We have in previous cases ‘explicitly recognized that a one-time contract for the purchase of goods is an insufficient basis for jurisdiction.’ ” (Quoting Vista Land, & Equip., L.L.C. v. Computer Programs & Sys., Inc., 953 So.2d 1170, 1177 (Ala.2006).) Therefore, based on the Supreme Court’s language in World-Wide Volkswagen and on our own decision in Troncalli, we conclude that the exercise of personal jurisdiction over CBT by the trial court in this case would violate due process.
CBT states in its reply brief that “[n]othing in any of the evidence presented by Dabbieri shows anything at all having been done by [CBT] to show it having any contact directed to the State of Alabama.” CBT’s reply brief, at 5. CBT continues:
“The only thing [CBT] did was sell a tire to Dabbieri, who initiated the contract, gave them an Alabama address, and, according to Dabbieri, but denied by [CBT], failed to warn her the tires on her van were the wrong size. This single event took place entirely in High Springs, Florida, at the shop of [CBT] and resulted from the unilateral activity of Dabbieri. This is the only contact enumerated by Dabbieri which is related to her cause of action. Any contact [CBT] may have had with Donald Wease would not be related to plaintiffs cause of action against [CBT].”
CBT’s reply brief, at 5. We agree. The limited evidence before this Court gives no indication that CBT “purposefully availed” itself of the protection of the laws of Alabama or that it should reasonably have expected to be haled into court here.

Conclusion

Based on the foregoing, we conclude that CBT had a clear legal right to have Dabbieri’s claims against it dismissed; thus, the trial court erred in denying CBT’s motion to dismiss. We therefore grant the petition and issue the writ of mandamus, directing the trial court to vacate its order denying CBT’s motion to dismiss and to enter an order dismissing Dabbieri’s action as to CBT.
PETITION GRANTED; WRIT ISSUED.
MALONE, C.J, and STUART, BOLIN, SHAW, MAIN, and WISE, JJ., concur.
WOODALL and MURDOCK, JJ., concur in the result.

. The nature of the entity Alabama Cable is unclear from the materials before the Court. It is referred to in those materials as both an independent company and "Donald Wease d/b/a Alabama Cable and Fiber Repair.”

. Dabbieri and Wease are both named on the bill of sale for the purchase of the van, indicating that they both had an ownership interest in the vehicle, but neither the title nor the registration for the van are included in the materials before us.

. PDQ, which sold the van to Wease and Dabbieri, also filed a motion to dismiss for lack of personal jurisdiction; that motion was also denied, and, like CBT, PDQ filed a petition for a writ of mandamus with this Court. The petitions filed by PDQ and CBT were consolidated for purposes of briefing and submission, and a significant portion of Dabbi-eri’s brief is in response to PDQ's petition. However, PDQ’s petition was withdrawn and is no longer before this Court.

. See Dabbieri's response in opposition to CBT’s motion to dismiss, at 5 ("This is a case of specific jurisdiction.”).